**UNITED STATES of America,
Appellant,**

v.

**Jose MORALES, Defendant-Appellee.**

**No. 354, Docket 85–1256.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 29, 1985.

Decided April 16, 1986.

Vincent L. Briccetti, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Stuart E. Abrams, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellant.

Gerald J. McMahon, New York City (Dean E. Manis, New York City, of counsel), for defendant-appellee.

Before MESKILL, CARDAMONE and WINTER, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from part of an order entered in the United States District Court for the Southern District of New York, Knapp, *J.*, dated June 19, 1985, and modified on June 21, 1985, suppressing appellee Jose Morales' pre- and post-arrest statements and certain physical evidence seized in a search incident to his arrest. Morales was indicted on a charge of possession with intent to distribute ten glassine envelopes containing heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B) (1982). He moved to suppress his statements as well as the physical evidence. On June 19, 1985, the court granted the suppression motion. *United States v. Morales*, 611 F.Supp. 242, 246 (S.D.N.Y.1985).

The government appeals from part of the district court's suppression order pursuant to 18 U.S.C. § 3731 (1982). The portion of the order appealed from is reversed and

the case is remanded for further proceedings not inconsistent with this opinion.

## BACKGROUND

New York City police officers obtained a search warrant for three apartments in a lower East Side building believed to be a cocaine distribution center. Mentioned in the warrant were the occupants of the three apartments, Maria Hernandez, Abby Morales, Maria Morales and one Afro Morales. The defendant-appellee was not mentioned in the warrant. J.App. at 124.

Acting under the warrant, five police officers entered the apartment of Maria Hernandez. They found Hernandez and her young niece in the kitchen; appellee Jose Morales was standing in the living room near a doorway leading into a back bedroom. The police directed Morales to sit on a couch in the living room, frisked him for weapons and placed him under guard. At this time, only Hernandez was advised of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

During a search of the apartment, police found three glassine envelopes of white powder resembling heroin on the back bedroom floor near where Morales had been standing. An Officer Cannon picked up the envelopes and gave them to an Officer Solberg who stepped into the living room, held up the envelopes and asked "Whose are these?" J.App. at 63. At the suppression hearing, Officer Solberg testified that he was not addressing this question to anyone in particular, J.App. at 97, although Officer Cannon stated that Solberg had approached and addressed Morales. J.App. at 82. When Morales responded "They are mine," he was handcuffed, advised of his *Miranda* rights and arrested. Morales indicated that he understood his rights.

The police searched the apartment for another thirty minutes but found no more narcotics. They then told Morales that he would be strip-searched and asked if he wanted to tell the police now if he had

anything else on his person. At this point, Morales said he had seven more envelopes in the waistband of his pants. Police asked why he had not dumped all of the glassine envelopes and he responded that he had not had time. An officer seized the seven envelopes. Morales was then taken to the police station.

After indictment, the government provided discovery to Morales pursuant to Fed.R. Crim.P. 16, notifying him that at trial it intended to use the oral statements made in the apartment before and after his arrest. Morales moved to suppress all of the statements, as well as the physical evidence seized.

The district court held an evidentiary hearing on the motion on May 9, 1985. At the conclusion of the hearing, Judge Knapp found as a matter of fact that "the police officer[s], acting in good faith, believed that everything they did was lawful." J.App. at 108. Several weeks later, at a conference called by the court, the court made tentative findings that there was "a technical violation of Miranda," J.App. at 115; that the oral statements had been made voluntarily and with "absolutely no compulsion of any sort imposed on" Morales, J.App. at 117; and, again, that the arresting officers had acted in good faith, with "no intent ... to violate the defendant's rights," *id.* [1]

On June 14, 1985, the government informed Morales' attorney by letter that on the evening of the arrest, Morales had asked an officer at the police station to tell him about the federal system. According to the government's letter, the officer had asked what he wanted to know and Morales had then stated in substance, that he had been caught with ten bags of heroin and had no choice but to plead guilty. While those statements did not come to light until after the suppression hearing, they were included in the suppression order. 611 F.Supp. at 246.

The district court found that Morales had been lawfully detained, *id.* at 244–45 (citing

---

**1.** On remand, the findings of voluntariness and good faith need not be reconsidered.

*Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)), that the circumstances of the detention did not suggest an arrest, *id.* at 245 (citing *United States v. Harley,* 682 F.2d 398 (2d Cir. 1982); *United States v. Timpani,* 665 F.2d 1 (1st Cir.1981)), but that Morales nevertheless had been subjected to custodial interrogation, *id.* The pre-warning, pre-arrest statement, "They are mine," was therefore suppressed under *Miranda.* This ruling is not challenged on appeal.

The court found that the probable cause for Morales' arrest derived entirely from Morales' unwarned admission, not from the officers' discovery of drugs in the bedroom. It concluded that under *United States v. Marchand,* 564 F.2d 983, 991 (2d Cir.1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978), the arrest was invalid and the statements made and physical evidence discovered subsequent to the arrest must be suppressed as "fruits" of the illegal arrest. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

## DISCUSSION

The government contends that there is no reason to exclude Morales' voluntary, unwarned statement, "They are mine," in determining probable cause. It then argues that the statement furnished probable cause for the arrest. Therefore, the government argues, the arrest was legal and there was no basis for suppressing the derivative evidence. Appellee's counter-argument is in essence that his statement admitting possession made prior to *Miranda* warnings cannot be considered by police officers in determining probable cause to arrest when that same statement is inadmissible at trial, and that consequently the arrest was illegal and the suppression of the evidence was proper.

Evidence obtained by exploitation of a primary illegality is regularly excluded under traditional taint analysis as the "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. at 487–88, 83 S.Ct. at 417. The *Wong Sun* doctrine is applied whether the fruit of the Fourth Amendment violation is physical evidence or a confession. *Oregon v. Elstad,* —— U.S. ——, ——, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985). Thus, if an arrest is illegal, a subsequent confession may be inadmissible as a "fruit" of that illegal arrest. *See Taylor v. Alabama,* 457 U.S. 687, 694, 102 S.Ct. 2664, 2669, 73 L.Ed.2d 314 (1982); *Dunaway v. New York,* 442 U.S. 200, 219, 99 S.Ct. 2248, 2260, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 604–05, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975). *See also Lanier v. South Carolina,* —— U.S. ——, 106 S.Ct. 297, 88 L.Ed.2d 23 (1985) (per curiam) (reaffirming principle that illegal arrest may render subsequent confession inadmissible).

It is axiomatic that a statement obtained in violation of *Miranda* is ordinarily inadmissible at trial. More recently, the *Elstad* Court established an irrebuttable presumption against the admissibility of unwarned statements as part of the prosecution's case-in-chief, —— U.S. at ——, 105 S.Ct. at 1292.

There is no claim here that Morales' statement made prior to the issuance of *Miranda* warnings can be used by the government in its case-in-chief. There is also no doubt that Morales' blanket admission of ownership, if it could be considered by police officers in determining probable cause for an arrest, was sufficient for that purpose. *See Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980) (once a suspect admits ownership of the drugs, the police have probable cause to arrest). If the unwarned statement could be considered by the police officers, then the arrest would be legal and the subsequently obtained statements and physical evidence would no longer be subject to taint analysis.

Our task is to decide " 'how sweeping the judicially imposed consequences' of a failure to administer *Miranda* warnings should be," *Elstad,* —— U.S. at ——, 105 S.Ct. at 1292 (quoting *Michigan v. Tucker,* 417 U.S. 433, 445, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974)), when the probable

cause to arrest derives from an inadmissible pre-arrest statement.

The *Miranda* presumption of coercion has not barred the use of unwarned, voluntary statements to impeach a witness, *Harris v. New York,* 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971); to identify a witness, *Michigan v. Tucker,* 417 U.S. at 450–52, 94 S.Ct. at 2367–68; to locate non-testimonial evidence, *New York v. Quarles,* 467 U.S. 649, 657–58, 104 S.Ct. 2626, 2633, 81 L.Ed.2d 550 (1984); nor has suppression of a first, unwarned confession barred admission of a second confession of guilt, *Elstad,* — U.S. at —, 105 S.Ct. at 1298.

> In *Elstad,* the Court noted that
> a procedural *Miranda* violation differs in significant respects from violations of the Fourth Amendment, which have traditionally mandated a broad application of the "fruits" doctrine. . . .
>
> . . . .
>
> [T]he *Miranda* presumption [of compulsion], though irrebuttable for purposes of the prosecution's case in chief, *does not require that the statements and their fruits be discarded as inherently tainted.* . . .
>
> . . . .
>
> It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period.

*Id.* at —, 105 S.Ct. at 1290–92 (emphasis added).

The purposes served by the exclusionary rule under the Fourth Amendment are not the same as those served under the Fifth Amendment. While the goal of the exclusionary rule in Fourth Amendment cases is to deter unlawful police conduct, *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), the goal in Fifth Amendment cases is to assure

trustworthy evidence, *United States v. Washington,* 431 U.S. 181, 187–88, 97 S.Ct. 1814, 1818–19, 52 L.Ed.2d 238 (1977). *See also Elstad,* — U.S. —, 105 S.Ct. at 1292. Furthermore, a technical *Miranda* violation is not in and of itself a violation of the Fifth Amendment. *See id.* at — n. 1, 105 S.Ct. at 1292 n. 1; *Miranda,* 384 U.S. at 467, 86 S.Ct. at 1624. The prophylactic *Miranda* warnings are not in themselves rights protected by the Constitution but are instead measures designed to protect the right against compulsory self-incrimination. *Quarles,* 467 U.S. at 654, 104 S.Ct. at 2630; *Edwards v. Arizona,* 451 U.S. 477, 491–92, 101 S.Ct. 1880, 1888, 68 L.Ed.2d 378 (1981) (Powell, J., concurring); *Tucker,* 417 U.S. at 444, 94 S.Ct. at 2363.

"Before we [will] penalize police error . . . we must consider whether the sanction serves a valid and useful purpose." *Tucker,* 417 U.S. at 446, 94 S.Ct. at 2364. We recognize that "police officers . . . have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Dunaway,* 442 U.S. at 214, 99 S.Ct. at 2257. "Just as the law does not require that a defendant receive a perfect trial, only a fair one, it cannot realistically require that policemen investigating serious crimes make no errors whatsoever." *Tucker,* 417 U.S. at 446, 94 S.Ct. at 2364. As we examine the facts in this case to determine whether there was probable cause to arrest Morales, we can find no "valid and useful purpose" to be served by disregarding his pre-warning statement to the officers who were acting in good faith. Where, as here, there is no indication of trickery or coercion, there is no justification for requiring a police officer to ignore incriminating admissions in arriving at a conclusion that there is probable cause for an arrest. Suppression of the uncounseled statements at the trial is sufficient to further the purposes of *Miranda.*

Therefore, because the unwarned statement was a proper basis for probable cause to arrest, the arrest of Morales was legal and the statements made in the apartment

and evidence seized after the arrest should not have been suppressed. They were obtained through Morales' voluntary actions after he had received *Miranda* warnings. The Supreme Court in *Elstad* rejected the notion that such voluntary behavior could not occur once a defendant had "let the cat out of the bag" by making an unwarned confession. — U.S. at —, 105 S.Ct. at 1294. The district court's reliance on *Marchand,* 564 F.2d at 991, was inappropriate here in view of the Supreme Court's rejection in *Elstad* of taint analysis in the Fifth Amendment context. Because the district court incorrectly bottomed its decision to suppress Morales' police station statements on Fourth Amendment taint analysis, we remand for a determination whether those statements, too, were made voluntarily. *See United States v. Wauneka,* 770 F.2d 1434, 1440–41 (9th Cir.1985).

We reverse that part of the district court's order challenged in this appeal and remand for further proceedings not inconsistent with this opinion.

CARDAMONE, Circuit Judge, dissenting:

Because I believe that the district court properly suppressed all the physical evidence and Morales' statements obtained as a result of the initial *Miranda* violation, I dissent respectfully and vote to affirm.

In my view, *Oregon v. Elstad,* — U.S. —, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), does not govern. In *Elstad,* the Supreme Court held that an unwarned and uncoerced admission does not taint subsequent admissions made after a suspect has been fully advised of and has waived his *Miranda* rights. *Id.* 105 S.Ct. at 1296. Although *Miranda* requires the suppression of the initial unwarned admission, the admissibility of a subsequent incriminating statement depends upon whether it was made both knowingly and voluntarily. The careful administration of a subsequent *Miranda* warning cures the taint that rendered the initial unwarned statement inadmissible. "The warning conveys the relevant information and thereafter the sus-

pect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an act of free will." *Id.* at 1294 (*quoting Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)).

This case differs from *Elstad* because of the extension here of the use made by the police of Morales' initial unwarned statement. He was not given the opportunity to avoid incriminating himself. Without the *Miranda* warning, he was not given the choice knowingly either to waive his rights or to refuse to waive them. Once he made his first unwarned admission, Morales was irrevocably incriminated inasmuch as the majority holds that the statement furnished the probable cause lawfully to arrest him. That arrest led to the discovery of the physical evidence and to all of Morales' subsequent incriminating statements. In *Elstad* only defendant's second statement, made after the administration of *Miranda* warnings, was relied upon—and his first unwarned statement was not used to incriminate him.

This case is also distinguishable from *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), in that the unwarned statements taken in violation of *Miranda* are here, in a sense, being used to prove the prosecution's case. Without Morales' initial unwarned admission, the government would have had no case against Morales and would not have uncovered the evidence which proved its case against him. In *Michigan v. Tucker,* 417 U.S. at 436, 94 S.Ct. at 2359, probable cause existed to arrest Tucker before any unwarned admissions were made or third party witness' testimony obtained, as evidenced by the fact that Tucker was already under arrest when he made his incriminatory statements. But here, Morales accused himself and confessed guilt before the police had evidence against him. No third party is involved, and it is precisely because Morales confessed complicity in the crime without *Miranda* warnings that the police were enabled to arrest him and threaten him with a search of his person.

Significantly, in *Tucker* the Supreme Court noted that it had said in *Miranda* "that statements taken in violation of the *Miranda* principles must not be used to prove the prosecution's case at trial." *Id.* at 445, 94 S.Ct. at 2364. Equally important, the *Tucker* Court continued, "the respondent did *not* accuse himself. The evidence which the prosecution successfully sought to introduce was not a confession of guilt by respondent, or indeed even an exculpatory statement by respondent, but rather the testimony of a third party who was subjected to no custodial pressures." *Id.* at 449, 94 S.Ct. at 2366.

The majority without reason extends the principles set forth in *Oregon v. Elstad,* 105 S.Ct. at 1285, and in so doing unnecessarily erodes those protections erected by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) against self-incrimination. In *Miranda* the Court observed: "A warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time." *Id.* at 469, 86 S.Ct. at 1625.

The logic seems irrefutable that Morales' initial statement cannot have been knowingly made because not preceded by the *Miranda* litany. I cannot agree with the majority that permits use of a citizen's initial unwarned admission. Since this first statement was extracted without warning, Morales' subsequent incriminating statements and actions were properly suppressed.