**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Juan Gilberto MEDINA and Benito**
**Vega–Garza,**
**Defendants–Appellants.**

**No. 88–2800**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 18, 1989.
Rehearing Denied Dec. 6, 1989.

David Garcia, Edinburg, Tex., for Medina.

Matias Morin, Jr., Robert J. Yzaguirre, McAllen, Tex., for Vega–Garza.

Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, DAVIS and JONES, Circuit Judges.

GEE, Circuit Judge:

Defendants Juan Gilberto Medina and Benito Vega–Garza appeal their convictions for conspiracy to possess with intent to distribute marihuana and possession with intent to distribute marihuana. We affirm.

At about 6:00 p.m. in December of 1987, two United States Border Patrol Agents, Richard Halverson and Thomas Miller were on line watch duty [1] in the Madero area of the Rio Grande River. As the agents were driving along a paved road located approximately 800 yards north of the Rio Grande River, they observed a blue van travelling on an elevated levee road that runs alongside a canal located about 400 yards north of the river. The agents saw the van turn off of the levee road and onto a narrow private road leading to Magic Valley Estates (the Estates), a series of picnic lots on the bank of the Rio Grande. The road leading to the Estates was notorious for alien and drug smuggling activities and, given that it was a Tuesday in December, it was unusual to see people driving into the Estates area after dark.

Suspicious that the van may be being used for smuggling, the agents pulled into a nearby driveway to observe. About five minutes after the van went by, a small red pickup drove along the levee road and also turned onto the road leading to the Estates. The agents remained there for an additional twenty minutes, during which time no other vehicles entered or departed the Estates area.[2]

At about 6:30 p.m., the agents moved to the entrance of the Estates road and closed the gate to the road. They then saw the previously sighted pickup truck and van coming toward the entrance, with the van ten to fifteen feet behind the pickup. Both were travelling slowly and without lights. The pickup then turned on its headlights and, almost immediately, the van turned on its headlights. The headlights on the van pointed upward, indicating that it was

1. Line watch duty by border patrol agents consists of patrolling the border for the purpose of detecting the illegal entry of aliens.

2. There is no other entrance to or exit from the Estates area.

carrying a heavy load. The van had appeared to be riding level when it entered the area. The pickup and van continued until they reached the agents.

When Agent Halverson questioned the driver of the van, Appellant Juan Medina, the agent smelled the odor of marihuana. He then saw large black bundles through the side window of the van. A registration check of the van indicated that it was registered to a Joe Vega at 501 North Sugar Road in Pharr, Texas.

Agent Miller spoke with Appellant Vega, the driver of the pickup. When this agent asked Appellant Vega if he knew a Joe Vega, Vega said that Joe was his brother, Jose Ovieda Vega. A registration check of the pickup revealed that it was registered to the appellant at 501 North Sugar Road, Pharr, Texas. The occupants of the two vehicles were then arrested and taken to the Border Patrol Office.

The case was turned over to the Drug Enforcement Administration (DEA). After being advised of his Miranda rights, Vega was questioned regarding his personal history. During the course of that questioning he informed the DEA agent that he resided at 501 North Sugar Road in Pharr, Texas, with his brother, Jose Ovieda Vega.

Along with Gladis Sias–Pereyra, a passenger in the van, Medina and Vega were indicted for conspiring to import marihuana in violation of 21 U.S.C. Sections 963, 952(a) and 960(b)(2) (Count 1); importing marihuana in violation of 18 U.S.C. Section 2 and 21 U.S.C. Sections 952(a) and 960(b)(2) (Count 2); conspiring to possess with intent to distribute marihuana in violation of 21 U.S.C. Sections 846, 841(a)(1) and 841(b)(1)(B) (Count 3); and with possessing with intent to distribute marihuana in violation of 18 U.S.C. Section 2 and 21 U.S.C. Sections 846, 841(a)(1) and 841(b)(1)(B) (Count 4).

A jury found Medina and Vega guilty on all four counts of the indictment.[3] Motions for judgment of acquittal were granted as to counts one and two. Medina and Vega

were each sentenced to concurrent 60 month sentences with a 4 year supervised release on counts three and four and were ordered to pay a $50 special assessment on each count.

■■■ Appellant Vega makes two contentions on appeal. The first is that the evidence was insufficient to convict him of either conspiracy or possession with intent to distribute. Vega maintains that there was no evidence offered which could be reasonably used to infer a decision as to when the marihuana was placed in the van, about who participated in the loading of the van, what the purpose of his entry into the recreation area was, or what role he played.

> In evaluating the sufficiency of the evidence of appeal, the reviewing court must consider the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in support of the jury's verdict. The evidence is sufficient if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*United States v. Yamin,* 868 F.2d 130, 133 (5th Cir.1989) (footnotes omitted). The essential elements of conspiracy are: (1) the existence of a conspiracy; (2) knowledge of the conspiracy; and (3) voluntary participation in the conspiracy. *United States v. Kaufman,* 858 F.2d 994, 999 (5th Cir.1988). No showing of an overt act is necessary. The "agreement between the co-conspirators and the defendant need not be proved by direct evidence, but may be inferred from concert of action." *United States v. Vergara,* 687 F.2d 57, 60–61 (5th Cir.1982). Such action may be inferred from the circumstances as a whole. Acts which are not per se unlawful lose that character when cumulatively viewed as the constituent elements of a criminal conspiracy. *United States v. Muller,* 550 F.2d 1375, 1380 (5th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977).

---

**3.** The case against co-defendant Sias–Pereyra was disposed of separately from Vega and Medina.

The evidence in the present case, reviewed cumulatively in the light most favorable to the Government, is sufficient to support a finding beyond a reasonable doubt that a conspiracy existed, that Vega knew of the conspiracy, and that he voluntarily participated in it. The pickup truck in which Vega was riding entered a secluded area known for drug smuggling just minutes after the van driven by Medina. It was unusual for vehicles to be in the area at that time of day and year. During the twenty minutes from the time Vega's pickup and the van entered the Estates area until the agents closed the road, no other vehicles entered or left. The van entered empty, a jury could have inferred, and returned loaded with about 650 pounds of marihuana. The two vehicles left together, with Vega leading, travelling in the dark without lights. Medina, the driver of the Van, followed Vega's lead in finally turning its lights on. The van belonged to Vega's brother, with whom Vega lived.

Although, when viewed separately, each of the foregoing circumstances might be considered consistent with innocent behavior, the cumulative effect of all this evidence and the reasonable inferences which may be drawn from it would enable a reasonable trier of fact to find that Appellant Vega was guilty of conspiracy to possess marihuana with the intent to distribute it.

Appellant Vega relies upon a number of cases to show that the evidence was insufficient to support his conviction. We do not find these cases controlling. In *United States v. Tolliver,* 780 F.2d 1177, 1180–81 (5th Cir.1986), *vacated on other grounds,* 479 U.S. 1074, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987), a woman, Angela Onick, was observed driving into a motel parking lot in a car owned by the common law wife of Tolliver, a known drug dealer. At the motel, Ms. Onick met with Tolliver, walked with him to a nearby restaurant, and returned to the car with him. Ms. Onick then departed. Shortly thereafter Tolliver was arrested in the motel with several co-defendants in possession of substantial quantities of heroin and money. Agents then detained Ms. Onick and searched the car she was driving. In the crack between the seat back and the seat bottom the agents found heroin which matched in purity the heroin which was seized in the Tolliver arrest. In the trunk of the car, the agents found a blender with heroin residue, a strainer, a spoon, and a battery operated digital scale. Following her conviction for conspiracy to possess heroin with intent to distribute and possession with intent to distribute, she appealed. We reversed because there was no evidence to support an inference that Ms. Onick knew of Tolliver's dealings in heroin or that she knew the car she was driving contained contraband.

In contrast to Ms. Onick's situation in *Tolliver,* Vega's knowledge of the marihuana could easily be inferred from his entering a secluded area just after the van entered and remaining for 20 minutes, during which time 27 bundles of marihuana weighing in total 650 pounds were loaded into the van.

Although mere presence at the scene of the crime or close association with a co-conspirator alone will not support an inference of participation in a conspiracy, *Vergara,* 687 F.2d at 61, presence is a significant factor to be considered within the context of the circumstances under which it occurs.

> In most cases ... the evidence establishes not mere presence but presence under a particular set of circumstances. In such a case, the task of determining the sufficiency of the evidence is not aided by the ritualistic invocation of the "mere presence" rubric. Rather, it requires an examination of all of the proved circumstances, including presence, to determine whether from them a reasonable jury could infer and find beyond a reasonable doubt knowing and intentional participation.

*United States v. Henry,* 849 F.2d 1534, 1537 (5th Cir.1988).

The other two cases relied on by Appellant also turned on the issue of knowledge. In *United States v. Moreno–Hinojosa,* 804 F.2d 845 (5th Cir.1986), we reversed the conviction of a passenger in a tractor-trail-

er rig found to be hauling 450 pounds of marihuana. Unlike the present case, there was no evidence to suggest that the appellant in *Moreno* was present when the truck trailer was loaded. Likewise, in *U.S. v. Gomez,* 776 F.2d 542 (5th Cir.1985), we reversed the conviction of one defendant where there was no evidence to suggest he was present when 1,180 pounds of marihuana were loaded into a truck, nor was there any other evidence to suggest that he was aware of the drug's presence. *Id.* at 549.

■ The evidence in this case is also sufficient to support Vega's conviction for aiding and abetting in the possession of marihuana with intent to distribute. To prove the crime of aiding and abetting under 18 U.S.C. Section 2, the government must prove (1) the defendant associated with a criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed. *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949); *United States v. Manotas–Mejia,* 824 F.2d 360 (5th Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 354, 98 L.Ed.2d 379 (1987). The defendant must share the principal's criminal intent and engage in some affirmative conduct designed to aid the venture. *Id.*

■ The same evidence that establishes Vega's knowing and voluntary participation in the conspiracy also establishes his association with the criminal venture and his participation in it. Vega's act of leading the van out of the river bank area in the dark was sufficient to allow a rational trier of fact to conclude that Vega did an act which contributed to the execution of the illegal possession. Even if, arguendo, there was no evidence to support a finding that Vega committed an act contributing to the criminal activity as required for aiding and abetting, the evidence is sufficient to

support a conviction of possession with intent to distribute marihuana. As possession with intent to distribute was the contemplated crime of the conspiracy, Véga is deemed to possess the marihuana through his co-conspirators' possession. *See Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946); *United States v. Ruiz,* 860 F.2d 615, 619 (5th Cir.1988).

Vega also contends that all statements he made concerning the relationship between himself and his brother, Jose Vega, should have been ruled inadmissible. The district court excluded Vega's first statement, made at the scene of his arrest, regarding his relationship to the owner of the van. The court determined that the agents' stop of the pickup and holding of Vega's alien registration constituted a custodial interrogation for *Miranda* purposes.[4] The court did allow, however, a second statement concerning his relationship to Jose Vega made following *Miranda* warnings while in the custody of the DEA.

■ The failure to give a *Miranda* warning prior to custodial interrogation alone will not necessitate suppression of all derivative evidence absent a constitutional violation, such as the statement being a product of coercion. *United States v. Bengivenga,* 845 F.2d 593 (5th Cir.) (en banc) *cert. denied,* — U.S. ——, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988); *see Oregon v. Elstad,* 470 U.S. 298, 305–07, 105 S.Ct. 1285, 1290–92, 84 L.Ed.2d 222 (1985). The record amply demonstrates that the Vega's first statement was obtained as the result of a reasonable and non-coercive request by one of the Agents.

Appellant Vega contends, however, that as the first statement was obtained prior to a *Miranda* warning, it may not be considered in determining whether probable cause existed to arrest him. Vega reasons

---

**4.** The district court relied upon our decision in *United States v. Warren,* 578 F.2d 1058, 1071 (5th Cir.1978), in determining whether Vega was in custody so as to trigger the *Miranda* requirement. Subsequent to the suppression hearing in this case, we handed down our decision in *United States v. Bengivenga,* 845 F.2d 593, 596 (5th Cir.1988). In *Bengivenga,* the four

factor test relied upon by the district court for determining custody was abandoned. In place of the four part test of *Warren,* we held that "custody" arises only when the restraint on freedom, as viewed by a reasonable person, is of the degree associated with formal arrest. *Bengivenga,* 845 F.2d at 596–98.

that as the district court found that no probable cause existed before the first statement was made,[5] the suppression of the statement rendered the arrest a violation of his fourth amendment rights and all evidence resulting from the illegal arrest should have been suppressed. This court has yet to address the issue whether information obtained prior to a *Miranda* warning may be considered in determining probable cause.[6]

■ We need not, however, consider the issue at this time. A review of the record reveals that Vega's pretrial suppression motion and objection at trial sought exclusion of the second admission on the ground that a *Miranda* warning was not given the morning the DEA Agent processed Vega. The issues of probable cause and derivative evidence are raised for the first time on appeal. The general rule is that, in order to preserve an issue for appeal, the grounds for an objection must be stated specifically. *United States v. Hicks*, 524 F.2d 1001, 1004 (5th Cir.1975), *cert. denied*, 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976); Fed.R.Evid. 103(a). While the district court did make a finding that probable cause did not exist before the first, suppressed, statement was made, the court did not have an opportunity to determine the effect of the statement on a finding of probable cause at the time of arrest or whether derivative evidence should have been suppressed. Accordingly, this issue is not properly before us.[7]

■ Appellant Medina contends that the evidence was insufficient to support his conviction of conspiracy and possession with intent to distribute. Medina maintains that there was no proof that he knew of the conspiracy or that he knowingly and voluntarily joined the conspiracy. The same evidence demonstrating Vega's knowledge and participation in the conspiracy apply equally well to Medina. The case against Medina is, however, stronger as he was the driver of the van loaded with the marihuana.

Medina also maintains that as the marihuana was not visible through its plastic packaging, the evidence was insufficient to establish that he knew the bundles in the van contained marihuana. Given the large quantity of the marihuana, the suspicious circumstances under which it was loaded, and the odor it gave off, a rational trier of fact would have little trouble finding beyond a reasonable doubt that Medina knew he was transporting marihuana.

Finding no error in the proceedings below and the convictions of Appellants Vega and Medina supported by sufficient evidence, we conclude that the judgment of the district court must be

AFFIRMED.

---

5. This finding was made pursuant to the first prong of the four-prong test of *Warren*. *See supra* note 4.

6. The Second Circuit squarely faced this issue in *United States v. Morales*, 788 F.2d 883 (2nd Cir.1986). The panel in *Morales*, with one dissenter, held that a voluntary statement taken prior to *Miranda* warnings was a proper basis for probable cause to arrest. *Id.* at 886–87.

7. Even if we were to apply the "poisonous tree" doctrine, the information concerning Vega's relationship to the registered owner of the van would still have been properly admitted. Evidence obtained through an illegal arrest is nevertheless admissible if the government would have discovered the evidence anyway. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377; *United States v. Miller*, 666 F.2d 991 (5th Cir.), *cert. denied*, 456 U.S. 964, 102 S.Ct. 2043, 72 L.Ed.2d 489 (1982). This "inevitable discovery" rule clearly applies to the evidence in this case. Even if the agents would have asked Vega no questions concerning his relationship to Joe Vega, a relatively simple investigation would have revealed that the two Vegas were brothers.