**UNITED STATES of America, Plaintiff,**

v.

**Ezequiel GALLARDO, Roberto Gallardo Chavez and Carlos Torres, Defendants.**

**No. Crim. 99–65.**

United States District Court, S.D. Iowa.

May 4, 1999.

F. Montgomery Brown, Cook Brown, Clive, IA, for Ezequiel Gallardo.

Luis Herrera, Johnston, IA, for Roberto Gallardo Chavez.

Chip J. Lowe, Howe Cunningham & Lowe PLC, Urbandale, IA, for Carlos Torres.

Erin K. Burke, U.S. Attorney, Des Moines, IA, for U.S.

## RULING GRANTING IN PART AND DENYING IN PART MOTION TO SUPPRESS

VIETOR, Senior District Judge.

Defendant Carlos Torres' motion to suppress was heard by the undersigned on April 23, 1999. Defendant Torres (hereinafter "defendant") moves to suppress all physical evidence seized from his person on March 5, 1999, all evidence seized in a search warrant search of Garage # 3 and a

Volkswagen Jetta on March 5, 1999, and all statements made by him to law enforcement officers on March 5, 1999. He contends that the search of his person was in violation of his Fourth Amendment right to be free from unreasonable search and seizure, that the search of Garage # 3 and the Volkswagen Jetta was fruit of the poisonous tree, and that any and all statements made by him were elicited in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## FINDINGS OF EVIDENTIARY FACTS

Defendant and the other two defendants in this case were indicted on March 15, 1999, in a one count indictment charging them with a violation of 21 U.S.C. § 846, conspiracy to knowingly and intentionally distribute methamphetamine, a Schedule II controlled substance. The indictment rests in part on evidence obtained on March 5, 1999.

On March 5, 1999, law enforcement officers, including Special Agent Arthur Vogel of the Drug Enforcement Administration, executed a search warrant at 1518 34th Street in Des Moines, Iowa, a single family residence. The warrant authorized a search of the premises and two vehicles; it did not authorize a search of any persons. At the time the officers commenced execution of the warrant, they had no information or knowledge of any illegal activity by defendant. Defendant opened the door to the residence for the officers and one of them, Officer Beardon, immediately took defendant down to the floor, handcuffed his hands behind his back, searched him and seized from him keys, money, and his wallet. At this stage of events, the officers had firearms drawn, and one was pointed at defendant. Officer Beardon went through the wallet he had taken from defendant and found receipts for Apartment 11 at 2101 S.E. Virginia in Des Moines, Iowa, and for Garage # 3 at that address. One receipt was in the name of co-defendant Roberto Gallardo Chavez, in respect to whom the officers had reliable information of drug trafficking.

All of the other persons present in the residence were also handcuffed. Once the site was secured, the officers holstered their firearms and defendant was re-hand-cuffed with his hands in front. All of the handcuffed persons were kept in the living room area of the home while the search, which lasted about four hours, was conducted. They were told by Agent Vogel that they were not under arrest, just "secured." While the search was in progress, Agent Vogel, who speaks Spanish, spoke to defendant, who speaks Spanish but does not speak English. He asked defendant five questions, all of which defendant answered. He asked him his name, his residence, his date of birth, whether he was a United States citizen, and (because defendant answered the citizenship question "no") he asked him whether his status was legal or illegal. Defendant replied that his status was illegal. Agent Vogel did not give defendant *Miranda* warnings before asking the questions. He, in good faith, believed that all of his questions were of an "identification" nature that did not require *Miranda* warnings. There is no evidence that Agent Vogel used any force, threats, promises, deception, trickery, or coercion of any sort in connection with asking defendant the five questions.

Based on defendant's admission that his status was illegal, Agent Vogel placed him under arrest for a criminal violation of the immigration laws. Had he not already been searched, a search of defendant's person would have been made incident to his arrest. After the search of the residence was completed, Agent Vogel transported defendant to his office and then to the offices of Immigration and Naturalization Service. No evidence was introduced that *Miranda* rights were ever given to defendant after his arrest.

After the search, law enforcement officers applied for and obtained a search warrant for Apartment 11 at 2101 S.E. Virginia in Des Moines and Garage # 3 and vehicles located in Garage # 3. The issuance of that search warrant rested in

significant part on the receipts found in defendant's wallet. Incriminating evidence was found in executing that search warrant.

## CONTENTIONS OF THE PARTIES

Defendant contends that Officer Beardon's search of him and seizure from him of the keys, money and wallet, and his examination of the contents of the wallet, violated his Fourth Amendment right to be free from unreasonable search and seizure. He further contends that the search of Garage # 3 and the Volkswagen Jetta was fruit of the poisonous tree—specifically, fruit of Officer Beardon's search of his person. He also contends that any and all statements made by him were involuntary and were elicited in violation of *Miranda*, and therefore those statements and any fruit of those statements are inadmissible at trial.

The government does not concede that Officer Beardon's search of defendant violated his Fourth Amendment rights, but it does not actively argue the point. The government actively contends that Agent Vogel's questioning of defendant fell within the exception to *Miranda* that allows basic identification questions to be asked without first giving the *Miranda* warnings. The government further contends that the arrest of defendant on immigration charges was a lawful arrest, and argues that even if Officer Beardon's search and seizure was in violation of defendant's Fourth Amendment rights, the items seized would be admissible under the inevitable discovery exception to the exclusionary rule because the items would, in any event, have been discovered and seized in a search of defendant incident to his arrest on the immigration charges. Defendant counters that the arrest on immigration charges was not a lawful arrest because the probable cause for that arrest was gained by obtaining a statement from defendant without benefit of *Miranda* warnings, and he also contends that the statement was involuntarily made.

## ULTIMATE FACT FINDINGS AND CONCLUSIONS OF LAW

I agree with defendant that Officer Beardon's search of him and seizure of the keys, wallet and money violated his right under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure. *See Ybarra v. Illinois*, 444 U.S. 85, 90–96, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). The items seized and any other fruits of that unlawful search, therefore, must be excluded from evidence in the trial of this case, *see Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and their progeny, unless the evidence is admissible under the inevitable discovery exception to the exclusionary rule, an exception recognized by the Supreme Court in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

I find as an ultimate fact that when defendant was asked the five questions by Agent Vogel, he was significantly deprived of his freedom of action. *Miranda* warnings, therefore, were required, *see Miranda*, 384 U.S. at 444, 86 S.Ct. 1602, unless the questions and answers fell within the identification questions exception to *Miranda*. *See Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990); *United States v. McLaughlin*, 777 F.2d 388, 391–92 (8th Cir.1985).

I find as an ultimate fact and conclude that the first three questions asked of defendant by Agent Vogel—those asking for his name, residence, and date of birth—fall within the identification questions exception to *Miranda*. *See Muniz*, 496 U.S. at 601, 110 S.Ct. 2638. The questions asking defendant about his citizenship and his alien status in the United States, however, were beyond the limited scope of the exception. *See id.* at 592–600, 110 S.Ct. 2638; *McLaughlin*, 777 F.2d at 391–92. Consequently, evidence of defendant's answers to the citizenship and alien

status questions will not be admissible at trial in the government's case in chief.

■ I find as an ultimate fact and conclude that defendant's answers to all five questions were voluntary. There is no evidence suggesting that he was coerced or his will overborne. *See Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) (articulating the standard of determining voluntariness, a standard that was reaffirmed more recently in *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976), and *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

■ Was the arrest of defendant unlawful because the information constituting the probable cause to make the arrest—defendant's admission that he is an illegal alien—was obtained in response to a custodial interrogation without benefit of *Miranda* warnings? The well reasoned opinion in *United States v. Morales*, 788 F.2d 883 (2d Cir.1986), leads me to conclude that the arrest was a lawful arrest. The facts here are virtually indistinguishable from those in *Morales*. The *Morales* court, relying on *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), noted that the purposes served by the exclusionary rule under the Fourth Amendment are not the same as those served under the Fifth Amendment, and that the prophylactic *Miranda* warnings are designed only to protect the right against compulsory self-incrimination and are not, in themselves, rights protected by the Constitution. *See Morales*, 788 F.2d at 886. The court concluded that suppression of the unwarned statements at the trial would be sufficient to further the purposes of *Miranda*, and "because the unwarned statement was a proper basis for probable cause to arrest, the arrest of Morales was legal *** and evidence seized after the arrest should not have been suppressed." *Id.* at 886–87.

■ A search incident to lawful arrest does not violate the Fourth Amendment, and evidence seized in such a search and evidence discovered in making an invento-

ry examination of the content of anything taken from the defendant, such as a wallet, is admissible evidence at the trial. *See Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

■ I find as an ultimate fact that if Officer Beardon's search and seizure had not occurred, there would have been a lawful search of defendant's person incident to his arrest resulting in seizure of the items that Officer Beardon seized, and there would have been an inventory examination of the contents of defendant's wallet disclosing the receipts. The application for the search warrant to search Apartment 11 at 2101 S.E. Virginia in Des Moines and Garage # 3 and vehicles located in Garage # 3, the issuance of the search warrant, and the discovery of the incriminating evidence in the garage and car would have followed. In other words, the physical evidence that defendant seeks to suppress inevitably would have been discovered even if Officer Beardon had not made an unconstitutional search of defendant when the officers entered the residence at 1518 34th Street. That physical evidence is, therefore, admissible at the trial under the inevitable discovery doctrine exception to the exclusionary rule recognized in *Nix v. Williams, supra.*

## RULING

Defendant Torres' motion to suppress is **DENIED,** except it is **SUSTAINED** as to all statements made by defendant on March 15, 1999, other than his statements in response to the questions asking him his name, address and date of birth.