UNITED STATES of America,
Plaintiff–Appellee,

v.

Wallace FRANK, Defendant–Appellant.

No. 89–2080.

United States Court of Appeals,
Tenth Circuit.

April 17, 1990.

Stephen P. McCue, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Presiliano Torrez, Asst. U.S. Atty., Albuquerque, N.M., William L. Lutz, U.S. Atty., and Robert J. Baca, Asst. U.S. Atty., for plaintiff-appellee.

Before SEYMOUR, Circuit Judge, and McWILLIAMS, Senior Circuit Judge, and BRIMMER, Chief District Judge.*

BRIMMER, Chief District Judge.

Appellant Wallace Frank appeals from criminal convictions in the District Court for the District of New Mexico. After a jury trial before Judge Campos, Frank was convicted on two separate counts of Crime on an Indian Reservation: Aggravated Sexual Abuse in violation of 18 U.S.C. § 1153 and 18 U.S.C. § 2241(a)(1).

Frank has filed this appeal, contending insufficient evidence exists to support a finding that the events at issue in Count I occurred in Indian country and secondly, that the trial court erred in refusing to

---

* The Honorable Clarence A. Brimmer, Chief Judge, of the United States District Court for the District of Wyoming, sitting by designation.

strike two jurors for cause. The court affirms the district court's findings and determinations on both issues.

## Background

Frank was charged with three counts of aggravated sexual abuse involving three different victims. All three sexual assaults are alleged to have occurred near Shiprock, New Mexico, on Indian Reservation land. Trial was held January 9–11, 1989, on Counts I and II. Count III was dismissed at the outset of trial because the alleged victim-witness failed to appear to testify. The jury heard the evidence and returned a verdict of guilty on the two remaining counts.

After voir dire, Frank moved to strike jurors number 3 and number 25 for cause. During the trial court's voir dire, prospective juror number 25, Richard Mather, indicated he was a personal friend of the prosecutor, Assistant U.S. Attorney Mark Jarmie. Mather indicated he and Jarmie had been friends for four or five years, had visited with Jarmie infrequently, and had been to the Jarmie's home. Jarmie had never been to Mather's home. The trial court questioned Mather further as follows:

THE COURT: Is there anything about your acquaintanceship with Mr. Jarmie which you feel might have a tendency to influence your decision in the Frank case?

MR. MATHER: No.

THE COURT: Do you feel, sincerely, that you can set this acquaintanceship aside and decide the case, in which Mr. Jarmie is involved, on the evidence presented in this courtroom and the instructions which I will give you at the end of the case?

MR. MATHER: Yes.

Record on Appeal Vol. III, at 30–31.

During voir dire by counsel for the defendant, Mather indicated he was one of the founding members of Mother's Against Drunk Driving (MADD). When questioned, he stated this also would not affect his ability to serve as a juror.

The parties and attorneys retired to chambers after voir dire to select the jury. The court excused certain jurors, and proceeded to hear challenges for cause from the parties.

Defense counsel challenged juror number 3, Connie Ferguson. On the back of her juror questionnaire, Ferguson had written:

My greatest objection to serving that far away from home is the fact that I might have to stay alone in a motel for one or several nights. That thought troubles me greatly. One only has to read the paper or watch the news for one day, to realize that a woman alone is a sitting duck, and could easily be a victim of a violent crime. This is a great fear of mine.

*Id.*, at 91. Frank argued Ferguson would be prejudiced against his case. Judge Campos denied the challenge for cause insisting defense counsel should have developed his concerns over Ferguson's statements during voir dire thereby allowing the court to discuss it with her.

Frank then challenged juror number 25, Richard Mather, due to his personal relationship with the prosecutor and his membership in MADD. The court denied this challenge as well. Consequently, Frank used his peremptory challenges to strike jurors number 3, Ferguson, and number 25, Mather, from the panel.

With a jury finally selected, the government proceeded with its case. The government's first witness was Jayne Jackson, the alleged victim in Count I of the indictment. Jackson is a 17 year old Indian who on March 22, 1988, was walking home from high school when she was offered a ride from Frank. Once in Frank's truck, Frank introduced himself as "Wallace" and asked Jackson if she'd accompany Frank to a nearby convenience/gas store that was just off the Navajo Reservation. Jackson agreed.

Jackson testified that after purchasing gas, Frank drove her back towards Shiprock. Using a diagram of the area, Jackson detailed her truck ride with Frank for the jury. She testified that Frank left the main road onto a dirt road, traveling in

a northerly direction towards Horseshoe Canyon Road located on the Navajo Reservation. She told the jury that Frank continued traveling on several other dirt roads, still proceeding in a northerly direction. Frank then stopped in an isolated area and raped her. Jackson pointed to a diagram of the area, to the spot marked "D" where she alleged the rape occurred. This location is well within the Navajo Reservation, approximately five miles to the nearest exterior boundary.

During Jackson's cross-examination, she admitted that it was getting dark at the time the rape occurred and she wasn't sure exactly where it happened. She also admitted she did not prepare the diagram. On redirect she stated "I wasn't sure where it happened, but I just told him [Bureau of Indian Affairs Investigator Keith Joey] that it happened—that it happened there where he took me, and I took him back." *Id.* Vol. IV, at 183–84.

Bureau of Indian Affairs (BIA) Criminal Investigator Keith Joey was assigned to investigate the incident and determine if it occurred on Indian land. Joey asked Jackson, on the day after the rape, to show him where it occurred. Joey states that Jackson pointed out to him where she and Frank drove. Upon arriving at the location where Jackson claimed the rape took place, Joey found tire tracks which he matched to the tires from Frank's truck. He did not make casts of the tracks, but measured the width and took note of the visible wear marks, and matched these details to the tires on Frank's truck, finding strong similarities. He admitted his comparison was not scientific. He also acknowledged that the ground at the scene of the rape was hard and little impression was visible. Furthermore, he conceded that Frank's tires were not unique and there was no way to determine how long the tracks he saw had been there.

At the conclusion of the government's case, Frank moved for acquittal. The motion stated:

> The government has failed to prove through the testimony of Jayne Jackson that the events at issue in Count I occurred within the exterior boundaries of the Navajo Reservation.

*Id.* Vol. V, at 335. The court denied Frank's motion for acquittal. At the conclusion of the case, the jury convicted Frank on both counts of aggravated sexual abuse as charged in the indictment.

### Discussion

Frank claims the trial court erred in denying his motion for acquittal. A review of the court's denial requires we consider, in the light most favorable to the prosecution, all the evidence presented at trial and any reasonable inferences drawn therefrom. *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir.1987). Defendant's motion will be denied if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis deleted).

United States District Courts have jurisdiction over enumerated major crimes committed by an Indian within Indian Country. 18 U.S.C. § 1153. Appellant Frank contends the evidence presented to prove that the aggravated sexual assault charged in Count I occurred on Indian land is insufficient. Frank argues that the evidence presented by the victim, Jayne Jackson, and BIA investigator Joey, was inadequate to meet the government's burden of beyond a reasonable doubt.

The testimony given by Jackson was confusing and oftentimes conflicting. She admitted that it was getting dark at the time of the rape and that she wasn't exactly sure where she was. During redirect, Jackson testified that she told BIA investigator Joey that the rape happened, "that it happened there where he took me, and I took him back." Record on Appeal Vol. IV, at 183–84. Her statement seems conflicting as to whether Joey took her to a spot he selected or if she directed him there.

The court believes, however, that a rational trier of fact could find that Jackson was indicating that she directed Joey back to the scene of the rape and that Joey, based upon her directions, took her there. Jackson's statements regarding the location of the rape were corroborated by Joey's unscientific comparison of tire tracks found at the scene of the rape and

the tires on Frank's truck. Jackson and Joey both pointed to this location on a map of the area as point "D." BIA Natural Resource Manager, Jerry Thomas, verified that point "D" was within the boundaries of the Navajo Indian Reservation. Accordingly, the evidence presented was sufficient from which a rational trier of fact could find beyond a reasonable doubt that the rape charged in Count I occurred on Indian land. The trial court's decision to deny Frank's motion for acquittal is affirmed.

Frank's second issue on appeal is the trial court's denial of his request to strike jurors number 3 and 25 for cause. Absent abuse of discretion, the trial court's determination of a juror's competency to sit will not be disturbed. *United States v. Berryhill*, 880 F.2d 275, 279 (10th Cir.1989); *United States v. Baker*, 638 F.2d 198, 201 (10th Cir.1980).

Juror number 3, Connie Ferguson, wrote on the back of her questionnaire that she was nervous about staying in a hotel by herself, fearing she might become a victim of violence. The trial court and counsel for the prosecution and defense did not question Ferguson further regarding her fears during voir dire. In chambers following the voir dire, Frank's counsel challenged Ferguson for cause. The trial court denied, stating defense counsel should have developed the matter during voir dire.

■ The trial court has the duty in a criminal case to properly voir dire prospective jurors to ensure the Sixth Amendment guarantee of an impartial jury is met. *Baker*, 638 F.2d at 200. Our review of the trial record indicates that the trial court conducted extensive voir dire. He asked whether any of the prospective jurors or members of their family had been the victims of criminal conduct or behavior, whether they had any feelings in favor or against the United States or the defendant, and whether they could render a fair and impartial verdict. Record on Appeal Vol. III, at 39–44, 59, and 68. Ferguson did not speak up any of these times to indicate that she could not render a fair and impartial verdict. Furthermore, her statement on the back of the questionnaire, while indicating nervousness about staying in hotels,

does not express any predisposition or opinion about the defendant's case. There is little, if any, evidence to demonstrate that Ferguson could not render a fair and impartial verdict in this case. The trial court's decision to deny the challenge to juror number 3 for cause, accordingly, is affirmed.

■ The trial court's denial of Frank's request to challenge juror number 25 for cause also must be affirmed. Juror number 25, Richard Mather, acknowledged being an acquaintance of the prosecuting attorney, Jarmie, and a founding member of MADD. The trial court questioned Mather further, asking Mather if his relationship with prosecutor Jarmie would tend to influence his decision in the Frank case. Mather responded "No." *Id.*, at 30. The court also inquired whether Mather could decide the case solely on the evidence presented and instructions given to which Mather said "Yes." *Id.*, at 30–31. There is also no indication that Mather's role in MADD would have influenced him in this case. *See id.*, at 80.

Accordingly, the convictions are AFFIRMED.