UNITED STATES of America,
Plaintiff–Appellee,

v.

Troy W. VADEN, Defendant–Appellant.

No. 89–6227.

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1990.

William M. Jennings, Longview, Tex., for defendant-appellant.

Lisa J. Stark, Peter McCloskey, U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., for plaintiff-appellee.

Before GEE, RUBIN and W. EUGENE DAVIS, Circuit Judges.

**W. EUGENE DAVIS, Circuit Judge:**

A jury convicted Troy Vaden, a guard in the Texas Department of Corrections (TDC), of conspiring to violate the rights of an inmate [1] and of aiding and abetting assaults on that inmate and a fellow officer resulting in a deprivation of their rights.[2] Vaden challenges the sufficiency of the evidence supporting his conviction. We find no error and affirm.

## I.

Vaden worked in the protective custody unit of a Texas prison, which housed inmates whose lives had been threatened. In early 1985, the staff was not large enough to control the institution, and gangs flourished. The TDC was in the process of hiring and training staff members to gain more control over the facility. During this period, TDC policy required that two guards escort a protective custody inmate wherever he went because inmates in protective custody were a threat to one another.

Juan Rivera, John Murray, Michael Bender, Ishmael Olquin and Armando Rodriguez were all protective custody inmates in January 1985. During that month, Rivera penned a note to Murray stating that he was planning to make "a move" on fellow inmate Rodriguez when possible. Murray wanted to protect Rodriguez from Rivera so he devised a plan to kill Rivera. Murray altered Rivera's note to make it look as if Rivera planned to attack Olquin, not Rodriguez. Murray showed Rivera's note to Olquin and Bender and convinced the two that Rivera planned to kill them. Olquin and Bender agreed to participate in Murray's plan to stab Rivera.

Murray gave Bender a homemade knife and Olquin a hacksaw blade. Olquin used the blade to cut a bar in his cell the night before the attack which would allow him to leave his cell to stab the passing Rivera. The plan called for Bender to use the knife to distract the guard while Olquin stabbed Rivera.

On the day of the attack, Officers Slater and Vaden began escorting Rivera from the showers. Sometime before the escort reached Bender's and Olquin's cells, Vaden, without warning Slater, abandoned the escort. As Rivera and Slater approached Bender's cell, Bender thrust the knife at the advancing escort. While Officer Slater turned his attention to Bender, Olquin escaped from his cell and stabbed Rivera four times. Rivera ran down the row to get away. Olquin then turned and pointed the knife at Slater. Murray and Bender yelled to Olquin, "Don't stick the boss." Olquin surrendered the knife to Slater and returned to his cell.

The first jury that heard this case could not reach a verdict so the trial judge declared a mistrial. The second jury convicted Vaden on all three counts. The trial judge denied Vaden's motion for judgment of acquittal. On appeal, Vaden argues that the evidence is insufficient to establish that he knew of the conspiracy or voluntarily participated in it. He also contends that the evidence is insufficient to establish that he aided and abetted in the assaults of Rivera and Officer Slater.

## II.

### A.

Count One of the indictment charged that Vaden, while acting under the color of state law, conspired to violate the federal rights of inmate Juan Rivera. 18 U.S.C.A. §§ 241, 242 (Supp.1990). To convict Vaden, the government had to prove that while acting under color of state law Vaden conspired with others to deprive Rivera of a right guaranteed him by the Constitution or law of the United States. The sufficiency of the government's evidence on the conspiracy element is the only challenge Vaden makes to his conviction on Count One. "To sustain a conspiracy conviction, the government must establish that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." *United States v. Osgood,* 794 F.2d 1087, 1094 (5th Cir.),

---

**1.** 18 U.S.C.A. §§ 241, 242 (Supp.1990).

**2.** Id. §§ 2, 242 (1969 & Supp.1990).

cert. denied, 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986).

In making a sufficiency of the evidence inquiry, we must consider the evidence in a light most favorable to the verdict and determine whether a rational fact-finder could have found Vaden guilty beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), aff'd, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). We draw all reasonable inferences favorable to the verdict, *United States v. Briscoe,* 742 F.2d 842, 845–46 (5th Cir.1984), and "accept all credibility choices that tend to support the jury's verdict." *United States v. McKenzie,* 768 F.2d 602, 605 (5th Cir.1985), cert. denied, 474 U.S. 1086, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986). The evidence need not exclude every reasonable hypothesis of innocence to support a guilty verdict. *United States v. Michelena–Orovio,* 719 F.2d 738, 743–44 n. 4 (5th Cir.1983), cert. denied, 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984).

Applying this standard, Vaden argues that a jury could not find beyond a reasonable doubt that he was a knowing and voluntary participant in the conspiracy to harm Rivera. We disagree. The evidence discussed below provides ample support for the jury's conclusion that Vaden conspired with Murray and Olquin to attack Rivera.

Two guards and an inmate testified that they saw Vaden talking to Murray for as long as forty minutes on the morning of the attack. Vaden then went to Olquin's cell and talked with him briefly. Given the inadequate staffing in the protective custody unit, the jury could infer that Vaden's lengthy conversation was unusual. Shortly after Vaden finished talking with Murray and Olquin, Bender asked Murray how the attack could be successful if two guards escorted Rivera. Bender testified that Murray said to him, "[D]on't worry about it, it's taken care of.... [H]e's read the letter and knows what's happening...." Since Murray had just finished talking to Vaden and Vaden was standing nearby at the time, Bender assumed that Murray referred to Vaden.

The morning of the attack, Rivera handed Vaden a note in which Rivera explained that he was having trouble with Inmate Rodriguez. Vaden filed a report and turned the note over to his superiors. Vaden argues that someone involved in the conspiracy would not have given the note to his superiors. We conclude, however, that the jury could infer that the note put Vaden on notice that Rivera needed special attention, which makes Vaden's abandonment of the escort more inexplicable. The jury was also entitled to infer that the note facilitated the attack because it caused the guards to take Rivera the longer route, by the attackers cells, to avoid Rodriguez.

The testimony concerning Vaden's unexplained abandonment of the escort is the most important evidence supporting the verdict. Around noon, Vaden and Slater escorted Rivera to the shower on one-row. Officer Clark, who was responsible for watching the escort ascend the stairs, Officer Slater and Officer Rogers, and Inmate Rivera testified that Vaden and Slater were at the showers when Rivera finished. Although Vaden denied commencing the escort, these witnesses testified that both Vaden and Slater began escorting the inmate back to his cell. Slater was in the lead and Vaden trailed Rivera. The same four witnesses testified that Vaden abandoned the escort before it reached the three-row. Vaden disappeared without warning Slater or Rivera.

Vaden claimed he was not in the cellblock area at the time of the attack because Lieutenant Hart ordered him to retrieve handcuffs located some distance away in another part of the facility. Lieutenant Hart testified that he did not speak to Vaden around the shower area or order him to get more handcuffs. Officer Clark stated that immediately after the attack he saw Vaden at the bottom of the steps on one-row in the cellblock.

Vaden offered other inconsistent and uncorroborated explanations of the events surrounding the stabbing. Vaden told the Grand Jury that he did not talk to anyone near Murray's cell on the day of the stabbing; yet, he admitted in an earlier inter-

view with a TDC Internal Affairs official that he talked to Murray that morning. During the Internal Affairs interview, Vaden acknowledged being sympathetic to the principles of the Aryan Brotherhood, the gang Murray founded, and having talked to Murray about his marital problems. However, Vaden told the Grand Jury that he never discussed his marital problems with Murray, claimed he was unfamiliar with the principles of the Aryan Brotherhood, and denied telling Internal Affairs that he sympathized with the gang. Although the evidence suggested that disciplinary court ended before Rivera began his shower, Vaden told the Internal Affairs official that he was taking inmates to disciplinary court at the time of the stabbing.

Finally, Inmate Bender testified that after Warden Woods interviewed him, Vaden asked Bender what he told Internal Affairs about Vaden's involvement in the stabbing. Vaden told Bender, "[W]hoever snitched me off to Internal Affairs, they're dead."

The jury was entitled to conclude that Vaden, as he had agreed to do, secretly abandoned Rivera's escort to assist Murray, Bender, and Olquin in the stabbing.

### B.

Count Two of the indictment charged Vaden with aiding and abetting the assault of Officer Slater. The crime of aiding and abetting occurs when the defendant associates with the criminal venture, purposefully participates in it, and seeks by his actions to make it succeed. *United States v. Tullos*, 868 F.2d 689, 694 (5th Cir.), cert. denied, — U.S. ——, 109 S.Ct. 3171, 104 L.Ed.2d 1033 (1989). An aider and abettor is liable for criminal acts that are the "natural or probable consequence of the crime" that he counseled, commanded, or otherwise encouraged. *United States v. Fagan*, 821 F.2d 1002, 1012 (5th Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988) (quoting *Russell v. United States*, 222 F.2d 197, 199 (5th Cir.1955)); see *United States v. Sellers*, 483 F.2d 37, 45 (5th Cir.1973), cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974).

We reject Vaden's argument that the assault on Slater was not a natural and probable consequence of the assault on Rivera. Vaden knew that the job of an escorting guard was to protect the inmate from attack. Because Slater's job required him to protect Rivera, Olquin's attack on Rivera would naturally and probably provoke a confrontation with Slater. The jury could have found Vaden guilty beyond a reasonable doubt of aiding and abetting the assault of Slater.

### C.

Finally, Vaden contends that the evidence is insufficient to support his conviction for aiding and abetting the assault of Rivera. Vaden argues, as he did on the conspiracy count, that the evidence did not establish that he intentionally abandoned Rivera's escort to facilitate the stabbing. "[T]o prove defendant's association with the criminal venture, there must be evidence that he engaged in some affirmative conduct designed to aid in the success of the venture with knowledge that his actions would assist the perpetrator...." *United States v. Cowart*, 595 F.2d 1023, 1031 (5th Cir.1979). As we state in our discussion on the conspiracy count, there is ample support for the jury's implicit finding that Vaden intentionally abandoned the escort to aid Murray, Bender, and Olquin in the stabbing of Rivera.

Because the evidence is sufficient to support the conviction on all counts, the judgment of the trial court is affirmed.

AFFIRMED.