**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Orestes Luciano ABREU,**
**Defendant–Appellant.**

No. 89–4145.

United States Court of Appeals,
Tenth Circuit.

April 13, 1992.

Wayne T. Dance, Asst. U.S. Atty. (Dee Benson, U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

David K. Smith, Salt Lake City, Utah, for defendant-appellant.

Before SEYMOUR and EBEL, Circuit Judges, and BROWN,* District Judge.

EBEL, Circuit Judge.

Appellant Orestes Luciano Abreu appeals his conviction and sentencing for various drug trafficking and weapons offenses. He raises eleven issues on appeal. We affirm the district court on all issues except for appellant's enhanced sentence for a second or subsequent conviction under section 924(c)(1). As to that sentence, we vacate and remand for resentencing pursuant to the en banc opinion in this case issued concurrently with this panel decision.

---

* Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation.

*Facts*

Appellant Orestes Luciano Abreu[1] was arrested in Salt Lake City along with his "nephew" and co-defendant, Juan Carlos Alvarez, who allegedly served as Abreu's interpreter and partner. The two had been the targets of a long-standing undercover narcotics investigation. Following the arrest, and under the authority of a search warrant, government officials entered defendants' Salt Lake City apartment and uncovered approximately 641 grams of a white powdery substance in a kitchen cabinet. The substance was subsequently tested and found to contain cocaine. In addition to the white powder, officials seized a scale, grinder, and plastic bags from under the kitchen sink, along with a triple beam balance scale commonly used by narcotics traffickers to weigh their drugs. A search of Abreu's bedroom uncovered a semi-automatic rifle, a .38 caliber Colt revolver containing three bullets, and ammunition for the rifle.

Abreu eventually was indicted for violations of 21 U.S.C. § 846 (conspiracy to possess and distribute cocaine), 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (possession with intent to distribute cocaine and aiding and abetting therein), 21 U.S.C. § 846 (conspiracy), and four counts of 18 U.S.C. § 924(c)(1) (use of a firearm during a drug trafficking crime). He was subsequently charged with violating 18 U.S.C. § 3146 for failing to appear after attempting to escape from a Mississippi halfway house before trial. Abreu pled guilty to the last of these charges and was convicted on all others following a jury trial. At the trial, his former partner Alvarez testified for the government. The district court eventually sentenced Abreu to a total of 380 months incarceration: 200 months on the drug possession charge and 200 months on the conspiracy charge, to run concurrently, plus 60 months for one gun charge and an enhanced 120 month sentence for the 'second or subsequent' gun conviction, both to run

consecutively following the service of the first 200 months. In addition, Abreu was sentenced to 18 months on the failure to appear charge, to run concurrently with the other sentences. Abreu now appeals his conviction and sentencing and raises eleven issues for our review. We consider each in turn.

I. Does Appellant's Conviction Under 21 U.S.C. § 841(a)(1) Violate the Eighth Amendment?

Appellant maintains that the mandatory minimum punishment prescribed by 21 U.S.C. § 841, violates his rights under the Eighth and Fourteenth Amendments. Specifically, appellant contends that (1) the mandatory minimum sentence deprived him of "individualized" sentencing, and (2) the mandatory minimum sentence is so grossly disproportionate as to be cruel and unusual under the test set forth in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). We find no merit to these claims.

■ Since the filing of this appeal, the Supreme Court handed down its opinion in *Harmelin v. Michigan*, — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), which upheld a mandatory life imprisonment sentence without possibility of parole for conviction of possession of more than 650 grams of cocaine. Although the Court was split in its reasoning, it is clear from the various opinions generated in that case that mandatory sentences are permissible for non-capital punishment. Thus, *Harmelin* discredits appellant's argument that his mandatory minimum sentence is unconstitutional because it deprives him of "individualized" sentencing.

■ Turning to appellant's proportionality argument, we likewise find no Eighth Amendment problem. Although a majority of the Court in *Harmelin* held that the constitution does impose a proportionality requirement on non-capital sentences,[2] con-

---

1. Appellant's Brief refers to appellant as Mr. Abrue. However, the notice of appeal, R.Vol. I, doc. 130, and all prior documents refer to defendant as Mr. Abreu. For consistency's sake, we will refer to defendant as Mr. Abreu, though we

are mindful that the proper spelling may be A–B–R–U–E.

2. Although the *Harmelin* Court upheld the sentence by a 5–4 vote, the majority was split on the appropriateness of the "proportionality"

siderable latitude is to be given to the legislature or Congress in setting sentences. The appellant is correct in asserting that "[t]he Armed Career Criminal Act calls for a mandatory minimum punishment which is greater than the maximum term imposed on many persons convicted of homicide," Appellant's Brief at 18. However, the Supreme Court has upheld similarly severe sentences for drug offenses. For example, in *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), the Supreme Court rejected an Eighth Amendment challenge to a prison term of 40 years and fine of $20,000 for possession and distribution of approximately nine ounces of marijuana. Similarly, in *Harmelin,* the Court upheld a life sentence with no possibility of parole for a defendant convicted of possession of slightly more than 650 grams of cocaine.

In the case at hand, appellant was convicted for possession of 641 grams of cocaine. Although appellant contends that the mixture seized was of low concentration and virtually "unmarketable," 21 U.S.C. § 841 does not require any degree of drug purity for a conviction. We think it is clear that the sentence at issue here is constitutionally sound. Although the ten-year minimum prescribed by § 841 is indeed a harsh penalty, it hardly compares to a life sentence without parole as was at issue—and upheld—in *Harmelin.* We therefore reject appellant's proportionality argument.

## II. Was There Sufficient Evidence to Support a Finding of Possession Under 21 U.S.C. § 841(a)(1)?

Appellant contends that there was insufficient evidence to support a finding of cocaine possession—one of the elements of a § 841(a)(1) charge. According to appellant, "[s]howing that one is present in the proximity of a cache of drugs is not suffi-

cient to demonstrate constructive possession, nor is the fact that the person accused habited the apartment where the drugs were found sufficient to impute constructive possession." Appellant's Brief at 20. We conclude that "constructive possession" is not an element of a § 841(a)(1) charge where, as here, appellant was charged under the aiding and abetting statute, 18 U.S.C. § 2. We therefore reject appellant's claim.

■ In this case, appellant was indicted and subsequently convicted of

knowingly and intentionally ... possess[ing] with intent to distribute in excess of 1/2 kilogram of a mixture containing cocaine, a Schedule II narcotic drug controlled substance, all in violation of Section 841(a)(1) of Title 21, United States Code, *and Section 2 of Title 18, United States Code,* with penalties as provided in Title 21, United States Code, Section 841(b)(1)(B).

R.Vol. I, Doc. 90 at 3 (emphasis added). According to 18 U.S.C. § 2, a defendant may be charged as a principal in the commission of a substantive criminal offense whenever he "aids, abets, counsels, commands, induces or procures its commission...." In order to prove a crime of aiding and abetting, the government must prove that the defendant associated with the criminal venture, that he purposefully participated in it, and that he sought by his actions to bring it about. *United States v. Vaden,* 912 F.2d 780, 783 (5th Cir.1990); *United States v. Medina,* 887 F.2d 528, 532 (5th Cir.1989).

Here, there was sufficient evidence for the jury to conclude that appellant aided and abetted Alvarez in the commission of the 841(a) offense. As we noted in *United States v. Culpepper,* 834 F.2d 879 (10th Cir.1987), "[e]vidence is considered suffi-

principle in non-capital cases. Justice Scalia, joined by Chief Justice Rehnquist, argued that "*Solem [v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)] was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Harmelin,* 111 S.Ct. at 2686. Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the "Eighth Amendment propor-

tionality principle also applies to noncapital sentences" but found that "our proportionality decisions ... require us to uphold petitioner's sentence." *Id.* at 2702. The dissenters argued that "the statutorily mandated punishment at issue here ... fails muster under *Solem* and, consequently, under the Eighth Amendment to the Constitution." *Id.* at 2716.

cient to support a criminal conviction if, when viewed in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* at 881 (citation omitted). We think it was perfectly reasonable for the jury to conclude that appellant associated with the criminal venture, that he purposefully participated in it, and that he sought by his actions to bring it about.

In any event, we also conclude that there was sufficient evidence to support a finding of constructive possession on the part of appellant. As we noted in *Culpepper,* knowing exercise of dominion and control over the narcotics constitutes constructive possession, and constructive possession may be joint among several individuals. *Id.* The fact that the cocaine was found in appellant's apartment, coupled with the testimony of Alvarez and various law enforcement officers, supports the conclusion that appellant constructively possessed the cocaine. We therefore affirm the conviction for possession with intent to distribute cocaine.

### III. Was There Sufficient Evidence To Support a Conviction for Conspiracy?

■ Appellant maintains that the prosecution must show, "by a preponderance of the evidence, *independent of the co-conspirator's statement,* that a conspiracy existed, and that the co-conspirator and the defendant were members of the conspiracy." Appellant's Reply Brief at 1 (emphasis in original). According to appellant, the government relied entirely on the statements of Alvarez—the alleged co-conspirator—without offering any independent proof of the conspiracy. Thus, appellant concludes that Alvarez' statements should have been excluded and the conviction overturned.

We reject appellant's argument. The cases cited by appellant—for example, *United States v. Silverman,* 861 F.2d 571, 576–80 (9th Cir.1988), and *United States v. Paris,* 812 F.2d 471, 475–76 (9th Cir.1987)— involved the admission of a co-conspirator's *out-of-court* statements. In both *Silver-*

*man* and *Paris,* the Ninth Circuit merely stated that a co-conspirator's out-of-court statements, standing alone, are insufficient to establish that defendant had knowledge of and participated in a conspiracy. In this case, however, Alvarez testified *directly* and extensively at appellant's trial as a government witness. Thus, he was at all times available for cross-examination by appellant.

■ Moreover, to the extent that the government did make use of some hearsay evidence—Captain Stuart Smith testified about several telephone conversations he and a government informant had with Alvarez—appellant at no time objected to the evidence on hearsay grounds. This being so, we may not reverse the district court unless the admission of such evidence was plain error. *See* Fed.R.Crim.P. 52(b). Since the co-conspirator whose declarations are in question was a government witness at trial, subject to full cross-examination by appellant on all relevant issues—including the comments referred to in Captain Stuart's testimony—we cannot say that the admission of such hearsay testimony seriously affected the fairness, integrity, or public reputation of appellant's judicial proceedings.

■ Finally, after reviewing the record, we find that there was indeed independent evidence to support appellant's conspiracy conviction. For example, we refer to evidence of an intercepted mailing between Harold Jackson, a known drug purchaser, and appellant containing $14,000 in cash. R.Vol. VI at 8–12. Although appellant offered an explanation for this evidence, we cannot say that it was unreasonable for the jury to conclude that appellant was a conspirator in the effort to traffic drugs between Florida and Salt Lake City.

### IV. Are Conspiracy to Distribute Cocaine (21 U.S.C. § 846) and Possession of Cocaine with Intent to Distribute (21 U.S.C. § 841) "Drug Trafficking Crimes" as Contemplated by 18 U.S.C. § 924(c)?

According to 18 U.S.C. § 924(c)(1), "[w]hoever, during and in relation to any

crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for ten years." [3] Appellant maintains that neither of his drug charges was sufficient to trigger a § 924 weapons charge. This is a fanciful and incorrect interpretation of both the statute and Tenth Circuit caselaw.

According to § 924(c)(2), as it existed at the time of the offenses in question, a drug trafficking crime means "any violation of Federal law involving the distribution, manufacture, or importation of any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." [4] We believe that both the possession and conspiracy charges brought against defendant fit that definition of "drug trafficking crime." We note that such charges have been used routinely as the basis for § 924(c) charges in the past. *United States v. McKinnell*, 888 F.2d 669, 674 (10th Cir.1989) ("Possession of a controlled substance with intent to distribute ... is a valid predicate offense for section 924(c)(1)"); *see United States v. Cardenas*, 864 F.2d 1528, 1529 (10th Cir.) (section 846 and 841(a)(1) convictions triggered § 924(c) conviction), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). Since we are aware of no cases to the contrary, and since appellant's position seems contrary to common sense and common practice, we categorically reject appellants' contention that "neither of [the] offenses is sufficiently 'involved' with the dist[ribution], manufacture, or importation of cocaine so as to bring them within the definitional provisions of 18 U.S.C. [§] 924(c)(2)." Appellant's Brief at 22.

## V. Was There Sufficient Evidence to Support Appellant's Conviction for "Use" of a Firearm During a Drug Trafficking Crime?

Appellant next contends that there was no evidence to suggest that the firearms seized from his apartment were "used" or "carried" during or in relation to the alleged drug trafficking crimes, as required under § 924(c). He argues that "[b]oth 'uses' and 'carries' ... are active verbs implying direct physical action," Appellant's Brief at 26, and that mere possession is insufficient to support a conviction under the statute. He further argues that there was never any evidence presented at trial as to who controlled the guns—himself or Mr. Alvarez.

As noted above, appellate review of this issue requires the court to consider, in the light most favorable to the prosecution, all the evidence presented at trial and any reasonable inferences drawn therefrom. *United States v. Frank*, 901 F.2d 846, 848 (10th Cir.1990). Based on our thorough review of the record, we think there was sufficient evidence to support the convictions.

The Tenth Circuit, like most other circuits, has recognized that

> a defendant can "use" a firearm within the meaning of § 924(c)(1) without firing, brandishing, or displaying it.... [T]he "uses" element of § 924(c)(1) is met when the defendant *has "ready access" to the firearm and the firearm "was an integral part of his criminal undertaking and its availability increased the likelihood that the criminal undertaking would succeed."*

*McKinnell*, 888 F.2d at 674–75 (emphasis added) (citations omitted). In this case, the firearms at issue were found in appellant's bedroom, in the same apartment where over half a kilogram of cocaine mixture

---

**3.** This section has since been amended, such that a second or subsequent conviction under this subsection now carries a twenty-year mandatory sentence.

**4.** This section has since been amended to define drug trafficking crime as any "felony punisha-

ble under the Controlled Substances Act (21 U.S.C. § 801 et seq.)...." The Controlled Substances Act includes both §§ 841 and 846—the two drug offenses brought against appellant here.

was stored. Many circuits have held that this kind of physical proximity, coupled with the understanding that guns have become tools of the drug trade, is enough to support a jury's inference that the guns played an integral role in appellant's criminal enterprise. *See United States v. Torres,* 901 F.2d 205, 241–46 (2d Cir.) (gun stored under mattress in a room containing drugs could reasonably be considered an integral part of defendant's criminal undertaking since it might have served to protect the cocaine and cash stored in the apartment), *cert. denied,* — U.S. —, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); *United States v. Alvarado,* 882 F.2d 645, 653–54 (2d Cir. 1989) (jury could reasonably infer that guns locked in safe were there to protect money and drugs in the event drug deal went sour, thus implicating § 924(c)(1)), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *United States v. Matra,* 841 F.2d 837, 839, 841–43 (8th Cir. 1988) (not unreasonable to infer that machine gun hidden under frame of waterbed served to protect defendant's cocaine and cash and was therefore "used" in relation to drug trafficking crime); *United States v. LaGuardia,* 774 F.2d 317, 319–20 (8th Cir.1985) (evidence of weapons found with cocaine and cash sufficient to support jury finding of § 924(c) violation, even though some of the weapons were not in the actual possession of the defendant).

In *United States v. Martinez,* 912 F.2d 419, 420 (10th Cir.1990), this court upheld a § 924(c)(1) conviction where the police "found an unloaded revolver, currency, and over $40,000 worth of cocaine in a closed briefcase in" defendant's room. The court cited a string of cases from other circuits upholding similar convictions. *E.g., United States v. Munoz–Fabela,* 896 F.2d 908, 911 (5th Cir.) ("It is enough that the firearm was present at the drug-trafficking scene, that the weapon could have been used to protect or facilitate the operation, and that the presence of the weapon was in some way connected with drug trafficking."), *cert. denied,* — U.S. —, 111 S.Ct. 76, 112 L.Ed.2d 49 (1990).

In this case, the presence of the weapons at the scene was bolstered by testimony that appellant and his "partner" had been previously robbed of their cocaine. That, plus the fact that the weapons were displayed to at least one cocaine customer, supports the inference that the guns were an integral part of appellant's criminal undertaking, used to protect both money and drugs. Although there was testimony presented at trial for the proposition that the guns were obtained from drug purchasers merely as collateral for future payments, we cannot say that it was unreasonable for a jury to infer that appellant used the weapons to facilitate his drug trade. This is especially true in light of the fact that appellant retained possession of the weapons for at least three months and was carrying another weapon at the time of his arrest. Appellant's insistence that there was no evidence presented at trial as to who controlled the guns—both Mr. Alvarez and appellant lived in the same apartment—is unpersuasive. Fingerprint evidence established that appellant handled at least two of the ammunition clips for the Mini–14 rifle. In addition, Mr. Alvarez' testimony gave the jury sufficient grounds on which to base their conclusion that appellant did in fact control the weapons.

We therefore find that it was not unreasonable for the jury to conclude, as it did, that appellant used the weapons in the commission of a drug trafficking offense.

**VI. Was Appellant Improperly Sentenced on Multiple Convictions When They All Related to a Single Criminal Episode?**

Appellant was sentenced on four separate counts: one count for possession with intent to distribute cocaine and aiding and abetting therein; one count for conspiracy to possess cocaine within intent to distribute; and two counts for use of a firearm during a drug trafficking crime. He now maintains that it was error to charge and sentence him separately when all counts arose out of the same criminal episode. The government counters that possession with intent to distribute and conspiracy to distribute cocaine are separate crimes, each requiring an element the other does not. The government further argues that the

separate gun convictions were proper since each alleged a violation involving a single firearm used in relation to a single and separate drug trafficking crime.

In *United States v. Henning,* 906 F.2d 1392, 1399 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991), we held that "where a defendant has been convicted of a single drug trafficking offense and more than one firearm was involved, a single violation of § 924(c)(1) occurs and multiple consecutive sentences may not be stacked to account for each firearm seized." Obviously the district court was mindful of *Henning* when it sentenced appellant on just two of the four § 924(c)(1) convictions. However, in evaluating appellant's sentence, we must now decide whether two consecutive sentences under § 924(c) may be applied where a defendant has been convicted of *two* drug trafficking offenses which arise out of the same criminal episode or operative facts and where a different gun is paired with each drug trafficking offense. Although several other circuits have endorsed the assessment of multiple § 924(c) penalties to separate underlying offenses charged in the same indictment, none of these cases confronted the specific facts facing us here. *See United States v. Bennett,* 908 F.2d 189, 194–95 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990); *United States v. Foote,* 898 F.2d 659, 668–69 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 81, *cert. denied,* —— U.S. ——, 111 S.Ct. 342, 112 L.Ed.2d 307 (1990); *United States v. Rawlings,* 821 F.2d 1543, 1545–46 (11th Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). Rather, each involved several "distinct" transactions, "occurr[ing] on ... different dates and ... requir[ing] proof of different sets of facts." *Bennett,* 908 F.2d at 194. In resolving this case of first impression, we look for guidance to our own case of *United States v. Chalan,* 812 F.2d 1302, 1315–17 (10th Cir.1987), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988), in which we held that multiple firearms counts are proper if the underlying multi-

ple offenses do not constitute a single offense for double jeopardy purposes.

In *Chalan,* defendant was convicted of felony murder while committing a robbery. He was also convicted of robbery and two counts of § 924(c) (use of a firearm in the commission a crime of violence). Although sentenced concurrently on the murder and robbery charges, defendant was sentenced to consecutive sentences for the weapons charges. Defendant appealed his weapons sentences, contending that the crimes underlying the § 924(c) convictions were really one offense. We agreed and held that "[u]nder the *Blockburger [v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),] analysis, the underlying crimes in this case constitute a single offense for double jeopardy purposes, and a single 'crime of violence' within the meaning of section 924(c)." *Chalan,* 812 F.2d at 1317.

Like the defendant in *Chalan,* the appellant here asserts that the crimes underlying his two § 924(c) sentences were in fact a "single criminal transaction." *Id.* In order to evaluate this assertion, we must apply the test set forth by the Supreme Court in *Blockburger.* According to *Blockburger,* "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. Unlike the robbery and felony-murder charges at issue in *Chalan,* we think that the offenses charged here do in fact constitute separate offenses. As the Ninth Circuit and others have noted,

> [a]s a general rule, a substantive charge, and conspiracy charge based on the substantive charge, pass muster under the *Blockburger* test and retain their separateness. The reason for this is because a requirement for a conspiracy conviction is proof of an agreement which is not necessary to prove an underlying substantive count. And, conviction on the substantive count will require the consummation of the crime, which, of course, is not essential for completing the crime of conspiracy.

*United States v. Wylie*, 625 F.2d 1371, 1381 (9th Cir.1980) (citations omitted), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). The *Wylie* court concluded that "Congress did intend to allow the courts to impose consecutive sentences for conspiracy (21 U.S.C. § 846), and for substantive offenses (21 U.S.C. § 841(a)(1)), even when the proof necessary to obtain a conviction for the former was necessary to obtain a conviction for the latter offense." *Id.* at 1382 (footnote omitted). The Tenth Circuit followed the *Wylie* court in *United States v. Espinosa*, 771 F.2d 1382, 1402–03 n. 27 (10th Cir.), *cert. denied*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985), concluding that "[t]he district judge here could have sentenced defendants to consecutive sentences [on § 841 and § 846 charges]."

The fact that appellant's possession conviction was based on the aiding and abetting statute does not alter this calculus. Several circuits have held that conspiracy to commit a crime with another is a separate and distinct offense from that of aiding and abetting and involves the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting. *United States v. Goff*, 847 F.2d 149, 175 (5th Cir.) ("It is well established that conspiracy to commit a crime and the crime itself are separate punishable offenses. It is also well established that conspiracy and aiding and abetting are separate punishable offenses.") (citations omitted), *cert. denied*, 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 341 (1988); *United States v. Peterson*, 524 F.2d 167, 174 (4th Cir.1975), *cert. denied*, 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *United States v. Cowart*, 595 F.2d 1023, 1029–30 (5th Cir.1979); *United States v. Krogstad*, 576 F.2d 22, 29 (3rd Cir.1978); *United States v. Townes*, 512 F.2d 1057, 1058 (6th Cir.), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975). The Tenth Circuit reached this very result in *United States v. Jackson*, 482

F.2d 1167, 1176 (10th Cir.1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974):

> The law is well settled that commission of a substantive offense and a conspiracy to commit it are separate crimes. The substantive offense of illegally importing heroin into the United States requires no more than one person for its commission. Similarly, aiding and abetting does not require an agreement.... The essence of a conspiracy charge is an agreement to commit an offense against the United States. Whether [defendants] were convicted as principals or for aiding and abetting, it is clear their conviction does not rest on the agreement. Thus the offenses in Count One [illegal importation of heroin or aiding and abetting therein] require proof not essential to the conspiracy conviction. [citations omitted]

Based on these holdings, we conclude that the conspiracy and possession charges were separate offenses, and therefore separate "drug trafficking crimes" within the meaning of § 924(c). Since section 924(c) imposes additional sentences for *"crimes"* which have been committed with a weapon, and since the drug trafficking crime statutes referenced in section 924(c)(2) acknowledge the possibility that the same act or transaction may result in the violation of two or more distinct statutory provisions, we think it was appropriate for the district court to sentence appellant on two separate § 924(c) charges. Such a result is consistent with *Blockburger, Espinosa*, and *Chalan*.

## VII. Does Appellant's Sentence Violate the Eighth Amendment?

 Appellant maintains that the vast disparity between his sentence and that of his co-defendant, Mr. Alvarez, constituted an Eighth Amendment violation. Appellant received a sentence of 380 months imprisonment;[5] Alvarez received only 60

---

5. We note that as a result of our en banc decision in this case, *see United States v. Abreu*, 962 F.2d 1447 (10th Cir.1992) (en banc), appellant's

sentence on Count IV for 120 months (based on section 924(c)) is being vacated and his case is

months. As authority for this argument, appellant cites a Nebraska Supreme Court case (*State v. Garcia*, 216 Neb. 769, 345 N.W.2d 826 (1984)). Appellant's Brief at 40.

As we noted in *United States v. Sardin*, 921 F.2d 1064, 1067 (10th Cir.1990),

> The sentencing guidelines incorporate the principles of equality and proportionality. Their purpose is to narrow the "disparity in sentences imposed ... for similar criminal conduct by similar offenders." Guidelines Ch. 1, Pt. A.3. The guidelines mandate the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). We have specifically recognized and endorsed this principle. *United States v. Jackson*, 921 F.2d 985, 987–989 (10th Cir.1990) (en banc); *see also United States v. White*, 893 F.2d 276, 278 (10th Cir.1990)....

However, "[w]hile similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences *are allowed* where the disparity is explicable by the facts on the record." *United States v. Goddard*, 929 F.2d 546, 550 (10th Cir.1991) (emphasis added) (citations omitted). In this case, appellant has failed to designate a record which would enable us to evaluate the appropriateness of his sentence. Specifically, we are unable to review the presentence report or any testimony made at the sentencing hearing. Moreover, we have virtually no information regarding the sentencing of Mr. Alvarez; we do not know the full charges contained in his indictment nor his criminal history nor the sentencing court's assessment of his cooperation and/or acceptance of responsibility.[6] That being so, we cannot say that appellant's sentence was unjustified. *See United States v. Jimenez*, 928 F.2d 356, 364 (10th Cir.), *cert. denied,* —— U.S. ——,

112 S.Ct. 164, 116 L.Ed.2d 129 (1991). Given appellant's failure to specify the source of the disparity and the details of the record, we affirm the sentence imposed by the district court.

**VIII.** Did the Trial Court Properly Impose an Enhanced Ten Year Sentence for One of Appellant's Convictions Under 18 U.S.C. § 924(c) as a "Second or Subsequent Conviction"?

 Appellant contends that the district court erred in imposing an enhanced ten-year sentence for appellant's gun conviction on Count IV pursuant to the second sentence of section 924(c)(1). We agree.

Our en banc decision in this case, handed down concurrently with this panel decision, holds that "a defendant may not receive an enhanced sentence under section 924(c) for a second or subsequent conviction unless the offense underlying this conviction took place after a judgment of conviction had been entered on the prior offense." *United States v. Abreu*, 962 F.2d 1447 (10th Cir.1992) (en banc). Because that was not the case here, we concluded that "Abreu ... [was] improperly given [an] enhanced sentence [ ] for [a] sentence or subsequent conviction [ ] under section 924(c)." *Id.* We therefore reversed appellant's enhanced sentence of ten years under Count IV and remanded for resentencing. On resentencing, the court should impose only a five-year sentence on Count IV as is provided in the first sentence of section 924(c)(1).

**IX.** Should the Trial Court Have Suppressed Evidence of a 9 MM Handgun Found in Defendant's Automobile at the Time of His Arrest?

 Appellant challenges the admission of evidence showing that he was in possession of a loaded pistol when arrested. The

---

remanded for resentencing on that count to the unenhanced sentence of 60 months (five years).

**6.** Alvarez' testimony at trial indicates that he pled guilty to charges of conspiracy and distribution of one-half ounce of cocaine. The

government moved to dismiss all other charges and agreed to inform the sentencing court of the full extent and value of Alvarez' cooperation with the United States. No more information could be gleaned from the record. R.Vol. III at 48–49.

handgun was uncovered immediately after defendant had left his apartment where the cocaine and other firearms were later found by agents executing a search warrant. After a bench conference outside of the presence of the jury, the trial court found that the evidence *was* probative as to defendant's intent, knowledge, and use of the weapons found in his bedroom. Finding that the "probative value of the evidence outweigh[ed] the prejudicial effect," R.Vol. II at 69–71, the trial court allowed the evidence. In evaluating the trial court's admission of evidence, we are bound to uphold the trial court unless we find an abuse of discretion. *See United States v. Keys,* 899 F.2d 983, 987 (10th Cir.) (decision whether to exclude evidence as being unfairly prejudicial is one for which trial judge is particularly well-suited), *cert. denied,* —— U.S. ——, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990). The trial court is given broad discretion in determining whether evidence is relevant and whether the probative value of the evidence outweighs any unfair prejudice to the defendant. We find no abuse of discretion here.

Although appellant contends that there was "never any showing that the[re] was any connection between the 9 mm. handgun and the drug trafficking charges," Appellant's Brief at 45, we believe that the handgun was indeed relevant to defendant's "possession, knowledge and ownership of the firearms found in the bedroom in the apartment." R.Vol. II at 70. Faced with almost identical circumstances in *United States v. Sullivan,* 919 F.2d 1403 (10th Cir.1990), this court agreed with several other circuits that "firearms are generally admissible in a drug conspiracy trial because they are 'tools of the trade' for those engaged in illegal drug activity." *Id.* at 1420 (citations omitted). Although we noted that such a broad proposition must not "substitute for a more detailed case-by-case analysis under Federal Rules of Evidence 401 and 403," *id.,* we were persuaded that the admission of the weapons was proper. We reach the same conclusion here.

In this case, we think the handgun may indeed have been relevant to determining whether the guns seized in the bedroom were merely collateral or protection for appellant's drug trade. Although we agree with appellant that such evidence may have carried the potential for jury prejudice, we cannot say that it was error for the district court to conclude that "the probative value of the evidence outweighs the prejudicial effect...." R.Vol. II at 71. Moreover, we note that the prejudicial effect of such evidence might have been further minimized by a jury instruction limiting the use of the handgun. However, appellant never requested such an instruction, either at the time the evidence was admitted or at the conclusion of the case. He has accordingly waived this aspect of the issue. Since we cannot say that it was an abuse of discretion for the trial court to allow evidence and testimony of the 9 mm. handgun, we affirm the trial court.

X. Should the Trial Court Have Suppressed Evidence and Testimony Concerning Appellant's Subsequent Mississippi Convictions?

▮ Appellant maintains that the trial court erred by allowing testimony regarding appellant's subsequent possession of a controlled substance in Mississippi. He asserts that the effect of such evidence was to prejudice and to inflame the jury against him. We once again review the district court's admission of evidence under the abuse of discretion standard.

Rule 404(b) of the Federal Rules of Evidence allows for the admission of evidence of "other crimes, wrongs, or acts" for the purpose of establishing motive, intent, preparation, plan, or identity. Rule 404(b) does *not* specifically exclude acts subsequent to the incident or incidents giving rise to the charges in the indictment. *United States v. Hogue,* 827 F.2d 660, 663 (10th Cir.1987). In fact, we have allowed evidence of subsequent crimes where it is similar to the crime charged or possesses some "signature quality." *United States v. Gutierrez,* 696 F.2d 753, 755 (10th Cir. 1982), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813, *cert. denied,* 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983).

In this case, the government sought to introduce testimony regarding appellant's possession of cocaine in Mississippi. The government argued that such evidence was "significant because it shows not only was the defendant in possession of a large quantity of cocaine within [the] last two months after he escaped from this jurisdiction but that he was doing so in association and in conjunction with a fellow family member of a much younger age than himself ... in the same manner that he enlisted Mr. Alvarez." R.Vol. III at 162–63. The government asserted that the Mississippi cocaine possession was relevant to "show the defendant's plan, opportunity, knowledge and intent in regard to the current charges." *Id.* at 163. The district court agreed and held that "the evidence is relevant ... and the probative value outweighs the prejudicial value." *Id.* at 164. We cannot say that that ruling was an abuse of discretion. Moreover, we note that the government was careful to avoid any reference to appellant's conviction on the Mississippi charges. They offered testimony only as to appellant's possession and "modus operandi" in Mississippi; it was the defense which revealed to the jury the facts of appellant's conviction. We therefore affirm the trial court's evidentiary ruling on this matter.

### XI. Did the Trial Court Properly Sentence Appellant Under the Sentencing Guidelines?

Appellant finally charges that the district court misapplied the federal sentencing guidelines in imposing his sentence. Specifically, appellant contends that the district court erred in sentencing him for bringing into Utah "in excess of five kilograms of cocaine to sell or distribute." Appellant's Brief at 53. He further contends that he was wrongly sentenced as an "organizer and leader." *Id.* at 54. Lastly, appellant asserts that the district court wrongly applied the sentencing guidelines criminal history calculus. We find that the sentence imposed by the district court was appropriate.

In the first place, we note that a sentencing court may look beyond the charges alleged in the indictment in imposing a sentencing. *United States v. Smith*, 929 F.2d 1453, 1459 (10th Cir.) ("[Q]uantities and types of drugs not specified in the charge with which defendant stands convicted are to be included in determining the base offense level 'if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.'") (citations omitted), *cert. denied*, —— U.S. ——, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991). In this case, the evidence presented at trial adequately supported the trial court's finding that appellant had brought more than five kilograms of cocaine into Utah as part of the overall conspiracy. *See* R.Vol. IV at 68, Testimony of Alvarez. The evidence of appellant's role as an organizer and leader was also sufficiently established at trial. *See* R.Vol. IV at 52–56; R.Vol. III at 125–26. Appellant's final assertion, that it was error for the court to consider his Mississippi conviction in determining his criminal history level since that conviction occurred *after* the commission of Utah crimes, is incorrect as a matter of law. In fact, the Tenth Circuit considered this very issue in *United States v. Fortenbury*, 917 F.2d 477, 479 (10th Cir.1990), and concluded that subsequent criminal conduct occurring before sentencing for an earlier offense is a permissible basis for departing upward by criminal history category. Moreover, because appellant failed to designate the record on sentencing, we cannot evaluate the district court's consideration of criminal history in any further detail. We therefore affirm the district court's sentence as to these particular issues.

### CONCLUSION

For the reasons given in this panel decision and in the en banc decision in this case issued concurrently herewith, we AFFIRM the district court in all particulars except as to appellant's consecutive sentence of 120 months on Count IV. As to that particular sentence, we REVERSE and REMAND for resentencing in accordance with our decisions.

WESLEY E. BROWN, District Judge, dissenting:

For the reasons set forth in the dissent in the en banc decision in *United States v. Abreu* and *United States v. Thornbrugh,* 962 F.2d 1447, I must respectfully dissent.