IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-40651
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CESAR ROBERTO TINAJERO,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. L-00-CR-1266-ALL
--------------------
March 27, 2002

Before DeMOSS, PARKER and DENNIS, Circuit Judges.

PER CURIAM:[*]

Cesar Roberto Tinajero appeals the district court's denial of his motion to suppress currency seized from him and his statements made before and after he was taken into custody. Tinajero argues that: (1) the pat-down of his clothes was unconstitutional because the police officer squeezed the objects in his pockets and ordered him to remove them; (2) there was no probable cause to arrest him and, therefore, all of the statements made after his allegedly illegal arrest are inadmissible; and (3) the statements he made after receiving <u>Miranda</u>[1] warnings are also inadmissible because there were no intervening events to break the causal connection

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

between the illegal arrest and the statements.  For the reasons that follow, we disagree.  We therefore affirm the judgment of the district court.

## BACKGROUND

On October 26, 2000, Officer Gustavo Guerra, an eleven-year veteran of the Laredo, Texas, Police Department, was assigned to monitor activity at Laredo's bus station.  Guerra observed Tinajero get off of a bus from Dallas, Texas.  Tinajero was carrying a duffle bag and walked hurriedly into the bus station.  Tinajero proceeded to walk out of the station's front entrance, but quickly stopped when he saw Guerra.  Guerra approached Tinajero and asked him in Spanish whether he was willing to answer a couple of questions.  Tinajero answered affirmatively in Spanish.  Guerra noticed that Tinajero was avoiding eye contact as Guerra asked him for some type of identification.  Tinajero produced a Texas driver's license with a Laredo address.  When asked the reason for his trip to Dallas, Tinajero stated that he went to Dallas to visit a relative.  Tinajero first stated that he stayed at his brother's house, but then stated that he had stayed at a motel called the Mustang Motel.  He did not respond when asked why he initially stated that he stayed at his brother's house.

At this point, Guerra noticed that Tinajero was very nervous and kept putting his hands in front of his front pockets.  Tinajero was wearing a black T-shirt and blue jeans, with the T-shirt outside of his jeans.  Thinking that Tinajero might have a weapon, Guerra asked to pat Tinajero down for safety, and Tinajero consented.  When Guerra patted him down, he felt two square, rectangular brick-shaped objects in both of Tinajero's front pockets.  Based on his experience, Guerra thought the objects could be drugs or drug proceeds.  Guerra asked Tinajero if he had any currency, and Tinajero answered negatively.  Guerra asked Tinajero what was in his pockets, and Tinajero said, "things."  Tinajero then stated that he had important papers that belonged to his

brother. Guerra again noticed that Tinajero was acting very nervous. Guerra asked Tinajero if he would mind taking the objects out of his pocket. Guerra agreed and stated that he had a package. Tinajero then removed the packages himself.

The packages contained currency wrapped in clear plastic and vacuum-sealed; one was labeled "30,000" and the other was labeled "10,000." Guerra had observed currency packaged in this way in prior drug cases and believed the packages contained drug proceeds. Tinajero stated that the currency belonged to his brother and that his brother gave him the currency at a motel for him to deliver to an unknown person at the plaza in Nuevo Laredo, Mexico.

Guerra then told Tinajero that he was not under arrest, but asked him whether he would be willing to go to the police station for further questioning; Tinajero agreed. Tinajero was transported to the police station by Sergeant Hector Garcia because Guerra had a drug-sniffing dog in his patrol car. Tinajero was not handcuffed during the trip to the police station.

When they arrived at the police station, Tinajero was escorted into an interview room. Tinajero was not handcuffed at this time. Police officers contacted agents of the Federal Bureau of Investigation (F.B.I.) and asked them to come to the police station. Before the arrival of F.B.I. agents, Laredo Police Department Investigator Bernardo Vasquez spoke with Tinajero in Spanish. Tinajero agreed to speak to Vasquez, and their conversation was "free flowing" and "cooperative." Vasquez did not advise Tinajero of his rights prior to their conversation.

During the conversation, Tinajero stated that he had been visiting his brother in Dallas, but he did not recall his brother's address or telephone number. Tinajero stated that he met his brother at a Dallas motel and that his brother gave him the currency to bring back.

Two F.B.I. agents subsequently arrived. Vasquez spoke with the agents briefly outside of the interview room, then asked

Tinajero whether he was willing to provide a written statement. Tinajero agreed to provide a written statement. The form on which Tinajero provided the statement contained <u>Miranda</u> warnings written in Spanish. Vasquez explained the meaning of the warning and that the information provided could be used against Tinajero in a court of law. Tinajero stated that he understood. Vasquez read each of the warnings to Tinajero, Tinajero read them himself, and then Tinajero initialed each warning to indicate his understanding. Tinajero then provided a written statement and signed it.

After Tinajero gave this statement, Vasquez asked Tinajero whether he had anything to add. Tinajero agreed to continue talking to Vasquez but did not ask for an attorney. Tinajero stated that his brother had other people working for him and that they were making about $100,000 a week. Tinajero also told Vasquez that he believed he was transporting "dirty money" and that he did not think the money was "righteous money." At some point during the interview, Vasquez was advised that the narcotic-sniffing dog had altered to Tinajero's packages of currency. After the interview, Tinajero agreed to make a recorded telephone call to his brother, in which he stated that he had been caught with the money and the money had been taken away from him.

Subsequently, Tinajero was indicted and charged with misprision of a felony (money laundering), in violation of 18 U.S.C. § 4. Tinajero filed a motion to suppress his statements and the currency seized from him. The district court granted the motion to suppress in part with respect to Tinajero's statements made at the police station prior to his being given <u>Miranda</u> warnings, but denied the motion to suppress in all other respects. Tinajero was convicted following a bench trial on stipulated facts. He received three years of probation, 120 days of home confinement, a $900 fine, and a $100 special assessment. Tinajero then filed this appeal.

**STANDARD OF REVIEW**

This court "employ[s] a two-tier standard of review in evaluating a district court's denial of a motion to suppress based on an evidentiary hearing." United States v. Orozco, 191 F.3d 578, 581 (5th Cir. 1999). This court accepts the district court's findings of fact unless they are clearly erroneous, but its ultimate conclusion as to the constitutionality of the law enforcement action is reviewed *de novo*. See id. A district court's factual finding that an encounter with police was consensual is reviewed for clear error. United States v. Gonzales, 79 F.3d 413, 419 (5th Cir. 1996). The evidence introduced at the suppression hearing is viewed in the light most favorable to the prevailing party. See Orozco, 191 F.3d at 581. The Government has the burden to prove that the warrantless search and arrest were constitutional and that the statements obtained from Tinajero were voluntary. See United States v. Guerrero-Barajas, 240 F.3d 428, 432 (5th Cir. 2001), cert. denied, 122 S. Ct. 919 (2002).

**ANALYSIS**

A. Initial Questioning at Bus Station

Tinajero contends that the district court erred in denying his motion to suppress his statements made at the bus station, the statements he made after he received Miranda warnings, and the currency seized from him. Tinajero argues that the police officer's pat-down search was an unconstitutional search because he squeezed the objects in Tinajero's pockets and ordered him to remove them.

Not all police-citizen contact invokes the Fourth Amendment. See United States v. Galberth, 846 F.2d 983, 989 (5th Cir. 1988). There are three tiers of police-citizen encounters: "communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause."

United States v. Berry, 670 F.2d 583, 591 (5th Cir. 1982) (en banc). Whether in the circumstances of a particular case the Fourth Amendment is invoked depends on the intrusiveness of the encounter as well as the strength of the government interest at stake. United States v. Simmons, 918 F.2d 476, 480 (5th Cir. 1990). A seizure occurs only if "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Berry, 670 F.2d at 595 (internal quotation and citation omitted). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual[;] . . . ask to examine the individual's identification . . .; and request consent to search his or her luggage . . . as long as the police do not convey a message that compliance with their requests is required." United States v. Cooper, 43 F.3d 140, 145 (5th Cir. 1995)(citing Florida v. Bostick, 501 U.S. 429, 435 (1991)) (internal quotation marks omitted); see also Galberth, 846 F.2d at 989; Florida v. Royer, 460 U.S. 491, 497 (1983).

"Police officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot." United States v. Michelletti, 13 F.3d 838, 840 (1994) (en banc). Reasonable suspicion exists "when law enforcement officials are able to point to `specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" United States v. Webster, 162 F.3d 308, 332 (5th Cir. 1998) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).

Tinajero has not shown that the district court erred in holding that Tinajero's Fourth Amendment rights were not violated by the questioning that occurred at the bus station and the discovery of the currency. Guerra's questioning was not threatening or coercive. Tinajero voluntarily answered Guerra's questions, voluntarily consented to a pat-down of his clothes, and

voluntarily removed the two packages from his pockets. See Cooper, 43 F.3d at 145; Galberth, 846 F.2d at 989. Tinajero has not shown that the district court clearly erred in finding that Tinajero voluntarily answered Guerra's questions and voluntarily removed the packages from his pockets. See Gonzales, 79 F.3d at 419.

### B. Post-Miranda Questioning

Tinajero asserts that he was under arrest when he was taken to the police station. He complains that the police officers lacked probable cause to arrest him because they did not have probable cause to believe that he had committed a crime. Tinajero argues that all of the statements that he made while he was in custody illegally are inadmissible. He further argues that statements that he made after receiving Miranda warnings are also inadmissible because there were no intervening events to break the causal connection between the illegal arrest and the statements.

A warrantless arrest may be made if the arresting officers have probable cause. United States v. Chappell, 6 F.3d 1095, 1100 (5th Cir. 1993). "Probable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." United States v. Carrillo-Morales, 27 F.3d 1054, 1062 (5th Cir. 1994).

"[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." Miranda, 384 U.S. at 478. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444.

"The failure to give a Miranda warning prior to custodial interrogation alone will not necessitate suppression of all derivative evidence absent a constitutional violation, such as the

statement being a product of coercion." <u>United States v. Medina</u>, 887 F.2d 528, 532 (5th Cir. 1989). In <u>Oregon v. Elstad</u>, 470 U.S. 298, 318 (1985), the Supreme Court held "that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confession after he had been given the requisite <u>Miranda</u> warnings." The fruit-of- the-poisonous-tree doctrine does not extend to <u>Miranda</u> violations. <u>See</u> <u>United States v. Harrell</u>, 894 F.2d 120, 125 (5th Cir. 1990).

The district court did not directly address whether the arrest of Tinajero was based on probable cause. The district court determined that Tinajero was in custody at the time that he made the first statements to Vasquez; the district court determined that because Tinajero did not receive <u>Miranda</u> warnings before he made these statements, these statements should be suppressed. The district court determined that Tinajero was then given <u>Miranda</u> warnings and that he subsequently voluntarily gave written and oral statements to Vasquez and F.B.I. agents.

A review of the evidence presented at the suppression hearing indicates that the officer had probable cause to arrest Tinajero for a possible money-laundering offense. Tinajero was observed walking hurriedly through the bus station, then stopped and turned around when he saw Officer Guerra standing outside of the bus station. Tinajero avoided eye contact, gave inconsistent answers to Guerra's questions concerning his travel, stated that he did not know his brother's address or telephone number, and appeared to be very nervous during the questioning at the bus station. Tinajero also placed his hands in front of his front pants pockets. Because Guerra thought Tinajero might have a weapon, Guerra asked permission to pat Tinajero down for weapons, and Tinajero consented. Guerra discovered two large brick-shaped objects in Tinajero's front pockets and asked him about the objects. Tinajero stated they were "things" and then stated that they were important papers for his brother. Guerra then asked whether Tinajero would

mind removing the objects from his pockets. Tinajero consented and voluntarily removed the packages from his pockets. The objects were clear plastic vacuum-sealed packages, one containing $30,000 and one containing $10,000. Based on Guerra's experience, he knew that drug proceeds are frequently packaged in this manner. Based on Tinajero's behavior in the bus station, inconsistent answers to Guerra's questions, his nervous demeanor, and his possession of such a large amount of currency packaged in the manner that drug-proceeds are frequently packaged, Guerra had probable cause to arrest Tinajero for a possible money-laundering offense. See Carrillo-Morales, 27 F.3d at 1062. Because probable cause for the arrest existed, we need not consider whether Tinajero's post-Miranda statements must be suppressed due to the allegedly illegal arrest.

Tinajero has not shown that the district court erred in holding that his post-Miranda statements were voluntary and, therefore, admissible. The evidence presented at the evidentiary hearing established that Vasquez read the Miranda warnings to Tinajero in Spanish, Tinajero read the warnings himself, and he initialed the form indicating that he had read the warnings. Vasquez advised Tinajero concerning the meaning of the warning and that the information he provided could be used against him in a court of law. Tinajero then provided a written statement. After giving the written statement, Vasquez asked him whether there was anything else that he wished to add. Tinajero continued to talk to Vasquez and made additional inculpatory statements. Tinajero has not shown that the district court erred in finding that the written and oral statements made by Tinajero after the Miranda warnings were voluntarily made. The evidence presented at the evidentiary hearing does not indicate that Tinajero was threatened or coerced into making the statements. The district court did not err in holding that the statements made by Vasquez during the interview were not threatening or coercive. See United States v. Barfield,

507 F.2d 53, 56-57 (5th Cir. 1975); <u>United States v. Brown</u>, 459 F.2d 319, 323-24 (5th Cir. 1971). Therefore, the district court did not err in denying Tinajero's motion to suppress the seized currency and statements made at the bus station, or the statements made after he received <u>Miranda</u> warnings at the police station.

### CONCLUSION

The evidence presented at the evidentiary hearing indicates that Tinajero voluntarily cooperated with Officer Guerra at the bus station. Because the pat-down was based on reasonable suspicion that Tinajero had a weapon and because Tinajero voluntarily removed the objects from his pockets, Tinajero has not shown that the district court erred in denying his motion to suppress the seized currency and his statements to Guerra at the bus station. <u>See</u> <u>United States v. Cooper</u>, 43 F.3d 140, 145 (5th Cir. 1995; <u>United States v. Galberth</u>, 846 F.2d 983, 989 (5th Cir. 1988).

Based on Tinajero's behavior at the bus station, his inconsistent answers to Guerra's questions, his nervous demeanor, and his possession of a large amount of currency packaged in the manner drug proceeds are frequently packaged, Guerra had probable cause to arrest Tinajero at the bus station for a possible money-laundering offense. <u>See</u> <u>United States v. Carrillo-Morales</u>, 27 F.3d 1054, 1062 (5th Cir. 1994).

Tinajero has not shown that the district court erred in holding that his post-<u>Miranda</u> statements were voluntary and, therefore, admissible. After being advised of his <u>Miranda</u> warnings in Spanish, Tinajero provided a written statement. When Officer Vasquez asked Tinajero if he had anything to add, Tinajero made additional inculpatory statements. Tinajero did not show that he was threatened or coerced into making the statements. Therefore, the district court did not err in holding that his post-<u>Miranda</u> statements were voluntary and admissible. <u>See</u> <u>United States v. Medina</u>, 887 F.2d 528, 532 (5th Cir. 1989).

AFFIRMED.